## William A. Moale *vs.* The Mayor and City Council of Baltimore.

It is a portion of the inherent sovereignty of the State to appropriate private property to public use, when public necessity or utility requires it, upon securing just compensation to the owner for any injury he may sustain; this is an exercise of the right of *eminent domain*, as contradistinguished from that of the *taxing* power.

There is a distinction between the taxing power and the right of eminent domain, the former exacts money or services from individuals as and for their *respective shares* of contribution to any public burthen, the latter takes private property, *not* as the owner's *share* of contribution to a public burthen, *but as so much beyond his share.*

In the latter case special compensation is to be made because the government is a debtor for the property so taken, but not in the former, because the payment of taxes is a duty and creates no obligation to repay otherwise than in the proper application of the tax.

A law providing for the opening of a street or road, and imposing *all the* costs on those who are the more immediately benefited instead of the community at large, is constitutional.

Where a party sells property lying within the limits of a city, and in the conveyance bounds such property by streets designated as such in the conveyance or on a map made by the city or by the owner of the property, such sale implies a covenant that the *purchaser* shall have the use of such streets.

The first proviso to the 16th section of the act of 1817, ch. 148, "that no person shall be entitled to damages for any improvement, unless the same shall have been made or erected before the laying out or locating of such street," is unconstitutional and void, because it denies to the owner the use of his land without compensation, and is in fact an act of confiscation

The owner of a lot lying on the bed of a street which is taken for public use, is entitled to a compensation for it *precisely as if no such street was opened over it.*

In an advertisement of sale the vendor described the lot as binding upon a certain street. HELD, that the *purchaser* acquired the right to the use of this street in front of the lot, *as a street,* and a subsequent purchaser, from the same vendor of the lot upon the bed of the street, can claim only nominal damages for its condemnation upon the opening of the street, because he only acquired the naked fee, subject to an easement or right of way, not only in the prior purchaser but in the public.

Where there has been no dedication the true rule of assessing damages is to value the lot precisely as though no street was to be opened, and to get at this the value of neighboring and contiguous lots may be looked to, but they do not furnish an unerring standard by which to measure the value of the lot condemned.

Moale *vs.* Mayor and City Council of Baltimore.

APPEAL from the Criminal Court of Baltimore city.

By an ordinance of the 22nd of May 1851, the mayor and city council of Baltimore directed the opening of East Biddle street, in said city, from Cathedral to Charles streets. The commissioners for opening streets proceeded to discharge the duties imposed upon them by this ordinance, and duly made return of their proceedings to the register of the city, and from their assessment of damages and benefits to him, William A. Moale, who was the owner of property on the line of the street proposed to be opened, appealed to the criminal court of Baltimore city, under the act of 1817, ch. 148, sec. 16, and revised ordinances of Baltimore city, No. 17, sec. 9. The following plat sufficiently explains the location of the streets and the adjoining lots.

East Biddle street is one of the streets located on Popple-ton's plat. The lots Nos. 1, 2, 3, 4, 5, 9 and 10, with others, were sold by a trustee under a decree of the court of chancery. In the advertisement of sale they were described as follows:

Lot No. 2 was described to be on the south-east corner of Biddle and Cathedral streets, fronting one hundred and fourteen feet on Cathedral and one hundred and ninety feet on Biddle street.

Lot No. 3 was described as the bed of East Biddle street, between Cathedral and Decker streets, about sixty-six by one hundred and eighty feet.

Lot No. 4 as a small triangular lot, fronting about one hundred and fifty-one feet on the north side of Biddle street, at the corner of Cathedral street.

Lot No. 5 as the south-east corner of Biddle and Decker streets, fronting thirty feet on Biddle street.

Lot No. 9 as sixty-one feet on the west side of Charles street, one hundred and twenty feet deep, over which East Biddle street will pass when opened.

Lot No. 10 as the north-west corner of Charles and Biddle streets, fronting thirty feet on Biddle street.

Lots Nos. 1, 5 and 4, were sold by the trustee at public sale on the 14th of October 1848, the two former to Moale and the latter to William Frick. All the others were subsequently sold to Moale at private sale. These sales were reported and duly confirmed by the chancellor, and the trustee executed but one deed to Moale for his entire purchase. This deed includes the bed of Biddle street so far as it had been sold, viz., lots Nos. 3 and 9, but calls for the lines of Biddle street wherever necessary to the description. Moale had purchased the lot on the south-west corner of Charles and Biddle streets in March 1846.

*Exception.* At the trial in the criminal court, Moale proved the value per front foot of the lots on Cathedral and Charles streets on each side of Biddle street. But the same witnesses who proved this value stated that they did not regard the bed of Biddle street, as owned by Mr. Moale, as worth anything, it being the bed of a street laid down on Poppleton's plat, and therefore liable to be taken at any time by the city as a street, and hence worthless for any other purpose. There was also evidence that in the negotiation for the sale of this property

between the trustee and Moale, the lots on the bed of the street were estimated at a nominal value. Upon this evidence Moale asked three instructions to the jury, in substance as follows:

1st. That the deed from the trustee invested Moale with a title in fee to that portion of the bed of Biddle street embraced in it, and that it is not competent for the appellees to appropriate the same to the uses of a public street without making him a just compensation therefor, and that in estimating such compensation the jury are not at liberty to consider the fact of the indication on Poppleton's plat of said street; nor are the circumstances offered in evidence sufficient in anywise to impair his right to an allowance in damages of the full value of said property, subject however to the right of the jury to assess upon his contiguous or other property, such proportion of benefits resulting from the opening of said street as may be equitably chargeable to him.

2nd. That by the interpretation of the act of 1817, ch. 148, sec. 16, he is entitled to recover such damages as may be the value of his property proposed to be condemned, without regard to the terms of the first proviso in said section, subject as in the first prayer.

3rd. That the true measure of his damages is the value at which his property would be estimated by the jury if Biddle street, as proposed to be opened, was not located upon Poppleton's plat, and was not designed to be so opened, subject as in first prayer.

The court, (STUMP, J.,) rejected all these prayers and instructed the jury, that in making their estimate of the damages sustained by Moale by the opening of said street, they were bound to value the lots sought to be condemned, (being the bed of said street,) as unimprovable lots under the provisions of the act of 1817, ch. 148. To this ruling Moale excepted, and the jury having, by their inquisition, confirmed the report of the commissioners, he appealed to this court under the act of 1852, ch. 77.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*John Nelson* for the appellant.

1st. The first question in this case is, whether, under the act of 1817, *ch.* 148, *sec.* 16, the ground upon the beds of streets in the city of Baltimore is to be regarded as unimprovable? Has the legislature any power to interdict improvements upon the beds of streets without giving compensation to the owners? We say the first proviso to the sixteenth section of the act referred to, "that no person shall be entitled to damages for any improvement unless the same shall have been made or erected before the laying out or locating of such street, lane or alley, or part thereof, respectively," is not a constitutional exercise of legislative power, because it takes private property for public uses without compensation. The taking from a party the *use of* his property is, in fact, taking from him his property itself. It is true that the act of 1832, ch. 207, gives the discretion to the city authorities to limit the time within which particular streets shall be opened, and to provide that if, by such time, they are not opened the owners may improve them, yet no such discretion has been exercised; and the act of 1838, ch. 226, does not compel the city to adhere to the streets laid down on the plat in its future proceedings in opening streets. The result is, that owners may be kept out of the use of their property forever. If the legislature can say no use of property shall ever be made, without giving any compensation for such restriction, it can take private property for public use without compensation, for the principle is the same. The proposition is a startling one and cannot be sustained. See the *Old Bill of Rights, secs.* 3, 21. 2 *Kent's Com.*, 339. 1 *Baldwin's C. C. Rep.*, 220, *Bonaparte vs. Camden and Amboy Rail Road Co.* 5 *Gill*, 383, *Alexander, et al., vs. The Mayor and City Council of Baltimore.*

2nd. As to dedication: the principle is, that whenever a party by a conveyance calls for a street, he is under an implied covenant to his grantee that the latter shall enjoy that street. But in this case there is no such dedication—there is not one of the features of a dedication in the whole of it. See 2 *Gill*, 444, *Mayor and City Council of Baltimore, vs. White.* 1 *Md. Rep.*, 540, *White vs. Flannigain.* But suppose there

is a dedication in reference to lot No. 4, that can only operate a dedication of Biddle street, between Cathedral and Decker streets, and can have no effect upon lots Nos. 9 and 10, or that portion of the street opposite to them.

*Wm. F. Frick* for the appellees.

1st. What is the measure of damage for the appropriation of Moale's property for public use? If it was unimprovable under all the circumstances of the case, the rulings of the court below were correct and the judgment must be affirmed. Now we insist, that by the acts of 1817, ch. 148, sec. 16, 1832, ch. 207, and 1838, ch. 226, the bed of East Biddle street was, to a certain extent, an unimprovable lot, and so far as the rights of the appellant in that lot were affected by these acts, they were valid and constitutional. It is conceded that private property may be taken for public use if just compensation be made. The mode in which this compensation is made is not material. These acts are to be construed together, and their effect is to enhance the value of the property adjoining the streets authorised to be opened by them, and in *this way* compensation is made for the lots over which the streets pass; the very act which takes away the owner's property gives him compensation. See 17 *Wend.*, 655, *In the Matter of Furman Street.* 2 *Watts & Seargt.*, 323, *District of the City of Pittsburgh.* 14 *Ohio*, 147, *Symonds vs. City of Cincinnati.*

2nd. But whatever may be the validity of the acts in question in respect to their prohibitions upon the improvements of the street, upon the evidence in the case, Moale had no title in the bed of the street except the nominal fee, subject to the right of way, as an easement in the public under the circumstances in this case, for he bought *after* a dedication by his grantor of the bed of the street and with notice of such dedication. He is therefore bound by it, and in this view the lot must be considered to be an unimprovable lot. 3 *Kent's Com.*, 433, 434. 2 *Wend.*, 474, *Case of Lewis Street.* 8 *Wend.*, 98, *Livingston vs. Mayor of New York.* 11 *Wend.*, 487, *Wyman vs. Mayor of New York.* 4 *Paige*, 512,

*Trustees of Watertown vs. Cowen.* 1 *Hill,* 191, *Case of Thirty-Ninth Street.* 10 *Pick.,* 315, *Emerson vs. Wiley.* 17 *Mass.,* 415, *Parker vs. Smith.* 1 *Md. Rep.,* 540, *White vs. Flannigain.*

LE GRAND, C. J., delivered the opinion of this court.

We deem it but necessary to briefly state the principles which we think should govern the decision of this and all similar cases.

In the case of *Alexander and other, vs. The Mayor and City Council of Baltimore,* 5 *Gill,* 383, the principle was distinctly enunciated, that it is a portion of the inherent sovereignty of the State, to appropriate to a public use the property of individuals when public necessity or utility requires it, upon securing to the party a just compensation for any injury he may sustain.

This is not an exercise of the taxing power, but an exercise of the right of eminent domain as contradistinguished from it.

These two powers although somewhat alike are not the same. The distinction between them is clearly pointed out in a very able opinion of Justice Ruggles, in the case of *The People, vs. Mayor &c. of Brooklyn,* 4 *Comstock,* 423, 425. He says: "Taxation exacts money or services from individuals, as and for their *respective shares* of contribution to any public burthen. Private property taken for public use by right of *eminent domain,* is taken *not* as the owner's *share* of contribution to a public burthen, *but as so much beyond his share.* Special compensation is therefore to be made in the latter case, because the government is a debtor for the property so taken; but not in the former, because the payment of taxes is a duty and creates no obligation to repay, otherwise than in the proper application of the tax."

The case of *Alexander vs. The Mayor and City Council of Baltimore,* also establishes the constitutionality of a law providing for the opening of a street or road, which imposes all the costs on those who are the more immediately benefited instead of the community at large.

These principles, together with those recognized in the case of *White vs. Flannigain*, 1 *Md. Rep.*, 540, furnish us with all that is necessary for the decision of this. In that case it was laid down, that where a party sells property lying within the limits of a city, and in the conveyance, bounds such property by streets designated as such in the conveyance, or on a map made by the city, or by the owner of the property, such sale implies, necessarily, a covenant that the *purchaser* shall have the use of such streets.

We proceed to apply these principles to the case before us.

The appellant claims damages for the bed of Biddle street, according to its value, having reference to contiguous lots. On the other hand, it is said, he is entitled to but *nominal* damages, on the ground that the first proviso of the 16th sec. of the act of 1817, ch. 148, provides, "that no person shall be entitled to damages for any improvement, unless the same shall have been made or erected before the laying out or locating of such street, lane or alley, or part thereof respectively." And it was in conformity to this view, that the court below instructed the jury that the appellant was only to be allowed for his lots in the bed of the street as unimprovable lots. This ruling of the court brings before us directly the constitutionality of the proviso to which we have adverted. While it is clear that the sovereign power has the right to impose a tax in such amount as to it may seem meet, and also to appropriate private property to public uses, yet it cannot do the latter without making just compensation for it. The sacredness of the rights of property, is everywhere recognized by the spirit of the common law, Magna Charta and our Bill of Rights. Under our present Constitution, there could be no question, for it distinctly provides in its 3rd article, section 46, that compensation shall be made before the property is taken. Although the language of the Bill of Rights of 1776, is not so distinct, its spirit is equally as comprehensive so far as the right to indemnification is involved. We hold, therefore, that it was not competent to the legislature to confiscate the property of the citizen, and we regard the provi-

sion of the act of 1817, which denies to the proprietor the use of his land, as nothing short of an act of confiscation. It has been said in reply to this view, that the owner of the bed of a street liable to be opened, would be more benefited by the enhanced value of his adjoining property, than he would be damaged by the appropriation of his property in the bed of the street. This view assumes as a fact that which in many cases is not so. A person may not own any adjoining lots, and if his property lying in the street can be taken without compensation, then it is confiscation and nothing else. It has now been thirty-seven years since the passage of the act of 1817, and many of the streets designated on the plot of the city, have not as yet been opened. How many years may elapse before they are all opened, it is impossible to say; for aught we can see fifty or a hundred years may roll by before it is done. Besides, since the act of 1838, ch. 226, it is not incumbent on the city authorities to adhere to the line of the streets as laid down on the city plot. The power to widen, open or close up any street in the city, rests entirely in the discretion of the corporation. Under these two acts, those of 1817 and 1838, a person for an indefinite space of time may be deprived of the use of his property, because it lies on the bed of a street designated on the plot of the city, and eventually find that whilst he has paid taxes, and been denied the advantages to which he was entitled from the proper use of his land, that the street laid down on the plot has been abandoned. Such a state of things is repugnant to every notion of justice and cannot obtain our consent. We hold that a person owning a lot lying on the bed of the street which is taken for the public use, is entitled to be compensated for it *precisely as if no street was opened over it.* Of course this view is wholly independent of all question of dedication. In such a case there could be no claim interposed for damages, for the party having given the ground to the community can set up no just claim to be compensated for it.

The evidence in the cause shows, that the lots designated on the plot filed in it as Nos. 1, 5 and 4, were sold at pub-

lic auction on the 14th day of October 1848, the first two to the appellant and the other to Judge Frick. In the advertisement, Biddle street is distinctly referred to in the description of all three of these lots; and lot No. 4, the one purchased by Judge Frick, is described as "a small triangular lot commencing at the north-east corner of Cathedral and East Biddle streets, running on the latter about one hundred and fifty-one feet northerly twenty-five and-a-half feet, and thence to the beginning." This sale was reported to the chancellor and by him confirmed, in conformity to the descriptions of the advertisement, which were embraced in the report of the trustee. Lot No. 2, was not purchased by the appellant until after the sale to Judge Frick of lot No. 4, and therefore, subject to any rights which Judge Frick acquired by his previous purchase, among which, according to the principles we have indicated, was the right to the use of Biddle street, *as a street*, between Cathedral and Decker streets. So far therefore as lot No. 3, which is the bed of Biddle street, is concerned, we think the appellant only acquired by his purchase the naked fee in it, subject to an easement or right of way, not only in Judge Frick, but in the public, and this being so he is entitled to but nominal damages for its condemnation.

In regard to lot No. 9, we think the case different. Prior to his purchase of lot No. 10, the appellant was the owner of the lot on the south-west corner of Charles and Biddle streets, and when, therefore, he purchased lots Nos. 9 and 10, he acquired a complete title to the three lots, and is just as much entitled to be compensated for lot No. 9, as would have been the original proprietor of it in the absence of all dedication. In regard to it there is no supervening or conflicting rights as there is in regard to lot No. 3. The appellant owns the entire line of the three lots bounding on Charles street, whilst in relation to lot No. 3, before it became the property of the appellant, Judge Frick had acquired a title to lot No. 4, from the same grantor as appellant obtained his to lot No. 2, which gave him a right to lot No. 3, as a public street. No

subsequent act of the common grantor of both, could affect the rights which had been previously conferred on Judge Frick.

The prayers offered on behalf of the appellee, and the instruction granted by the court are erroneous, inasmuch as they are equally applicable to lots Nos. 3 and 9.

The true rule, where there has been no dedication, of assessing damages, is to value the lot precisely as though no street was to be opened. With a view to get at this, the neighboring and contiguous lots may be looked to, but they do not furnish an unerring standard to measure the value of the lot condemned. The one condemned may be more or less valuable than the adjoining lots. It or they may be in ravines or covered with, or free from rocks, making them more or less valuable according to the characteristics of the peculiar locality. Nor in estimating the value of the lot to be condemned, ought the circumstance of a street to be opened to be considered, for it is the street which enhances the adjacent property; the estimate should be made as if no street was to be opened.

With these views we remand the case to the court below.

*Judgment reversed and procedendo awarded.*