ROBERT C. HALL and JOHN W. HALL *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Questions as to what constitutes a Dedication of property to the Use of the public as a Street.*

A portion of a lot of ground lying south of J. street, in the City of Baltimore was condemned for the bed of W. street. The said lot was part of a large tract named "Greenwood," which under proceedings in equity had been decreed to be sold. The trustee under that decree caused a survey to be made and the whole property to be laid off into lots, streets, and alleys, (one of the streets being W. street;) and a plat was made, with a view to the sale thereof in lots. The lots thus laid off and platted were offered at public sale in July, 1845, but withdrawn. A private sale was afterwards made of sundry lots, by numbers, as designated on the plat, the lots to run to the centre of the streets to be opened. The plat was not filed in the proceedings in equity. HELD:

That the proceedings in the equity case, and the acts of the trustee, furnished no evidence of the dedication of that part of W. street, condemned as above.

Subsequently the trustee sold to C. a part of said whole tract, lying both on the north and south sides of J. street, and including the bed of W. street. C. sold a part of the land so acquired by him, lying on the *north* side of J. street, and on the west side of W. street, and gave a deed therefor, calling for the west side of W. street as one of the boundaries. HELD:

That whatever effect that deed might have in securing to the grantee, and to the public the free use of W. street contiguous to the property conveyed, it was clear, from the decision in *Hawley's Case*, 33 *Md.*, 270, that it could not operate as a dedication of the bed of W. street south of J. street.

C. also conveyed to L., by deed, dated March 30th, 1848, two parcels of said land lying on the south side of J. street, the description of which in said deed made them bind, the one on the west and the other on the east side of W. street. In said deed, W. street was

referred to as laid out by commissioners under the Act of the General Assembly of Maryland, of December session, 1817, ch. 148, and the parcels of ground conveyed were mentioned as comprising certain lots by numbers, as numbered on a map of " Greenwood," made by A. J. and O. B. surveyors, in June, 1845. On the 21st day of August, 1849, C. sold and conveyed to L., with other property, the bed of W. street between said two parcels of land, as laid down on " Poppleton's Plat." At the date of this deed W. street had not been opened or used as a street or highway, and was in such condition that it could not have been so used; and so remained until it was filled up, enclosed and used by the present owners of the property, deriving their title under L. HELD:

1st. That the deed of March 30th, 1848, standing alone, would furnish evidence of the intent of the parties, that the portion of the bed of W. street therein mentioned and upon which the parcels of land conveyed by it abutted, should remain as a public street for the benefit of the purchaser.

2nd. That by the said deed there was an implied covenant in favor of L., the grantee, whereby he became entitled to the right of way or easement in W. street, as appurtenant to his property, which right, C., the grantor, or any one claiming under him as owner in fee of the bed of the street, would be estopped from denying.

3rd. That the implied covenant arising upon said deed in favor of L., was rescinded and abrogated by the deed of August 21st, 1849, whereby L. acquired the fee simple title to the bed of W. street; and consequently all right of the public to the use of the street, as the same could be derived only from the implied covenant of the parties, no longer existed.

4th. That the owners of the bed of W. street, between their two lots, on the south side of J. street, were entitled to substantial damages for its condemnation.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court ; and the following plat will facilitate the understanding of the locations therein referred to :

Hall *vs.* Mayor, &c. of Baltimore.

The cause was argued before BARTOL, C. J., ALVEY ROBINSON, and IRVING, J.

*William A. Stewart*, for the appellants.

*James L. McLane, City Counsellor*, for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

This appeal brings before us for review certain rulings of the Baltimore City Court, on appeal from the proceedings of the Commissioners for Opening Streets of the City of Baltimore, in the matter of opening Wolfe street, from Monument street to North avenue, under an ordinance approved April 23rd 1878.

The appellants are the owners of the leasehold interest in two adjoining lots of ground, fronting on Bel-Air avenue, and running thence eastwardly. The lots are each subject to the payment of a yearly rent of $800, and are enclosed and used as one lot, with improvements thereon, constituting a coal yard of considerable value; through which Wolfe street, as proposed to be opened, passes.

The Commissioners awarded to the appellants nominal damages only, for the land lying in the bed of Wolfe street, upon the ground that there had been a dedication to the public of the bed of Wolfe street, by the parties under whom the appellants derived their title.

It appears from the proof that the lot of ground in question was originally a part of a large tract of land known as "Greenwood," lying east of Bel-Air avenue, and belonging to one Spalding. Edward Hinkley, Esq. was appointed by a decree of Baltimore County Court, trustee to sell the "Greenwood" estate, and proceeded to have a survey made, and the property laid off into lots, streets and alleys, and a plat was made with a view to the sale thereof in lots.

The lots thus laid off and platted were offered at public sale in July 1845, but for want of satisfactory bids, no

sales were made. In the same month the trustee sold at private sale to Ellen Dykes twelve lots as designated on the plat by the numbers 115, 116, 117, 118, 119, 120, on the North side of John street, and 130, 131, 132, 133, 134 and 135 on the south side of Hoffman street, (the lots to run to the centre of the streets to be opened.) It is unnecessary to refer to subsequent sales of these lots, or to the sales of other lots made by the trustee. The plat which he procured to be made was not filed in the proceedings in the Chancery Court, and so far as relates to the particular lot of the appellants, here in question, lying in the bed of Wolfe street, the City Court, by granting the *second* prayer of the appellants, correctly instructed the jury that the proceedings in the chancery cause, and the acts of the trustee, furnish no evidence of the dedication of that part of Wolfe street here in question.

On the 1st day of September 1847 the trustee sold to Aaron Van Camp, and by deed dated March 6th 1848, conveyed to him all the land lying east of Bel-Air avenue and binding thereon, and extending to the centre line of Washington street; bounded on the north by the centre line of Hoffman street, and on the south by the lands belonging to the heirs of William H. Murray, deceased; excepting therefrom the half square of land sold by the trustee to Ellen Dykes. By this conveyance Van Camp acquired the title in fee to the bed of Wolfe street. From him the appellants acquired title, through sundry intermediate conveyances, and on his dealings with the property, rests the claim of dedication which was sustained by the Court below, and which forms the subject of this appeal.

The lot of ground of the appellants for which they claim compensation lies in the bed of Wolfe street south of John street.

On the 6th day of March 1848 Van Camp and wife conveyed to Margaret F. Tarr a lot of ground described as

follows : " Beginning at the corner formed by the inter-
section of the north side of John street, and the west side
of Wolfe street, and running thence westerly binding on
the north side of John street 25 feet, thence northerly
parallel with Wolfe street 160 feet; thence easterly parallel
with John street 25 feet to Wolfe street; and thence
southerly 160 feet, to the place of beginning, being a part
of the ground that by indenture * * * * was conveyed
by Edward Hinkley trustee to said Van Camp."

The appellee, in the Court below, relied upon this deed
from Van Camp to Margaret F. Tarr as evidence of the
dedication of the lot of ground in question ; and by its
*third prayer* asked for an instruction to the jury to that
effect ; but the City Court properly refused to grant that
prayer.

Whatever effect that deed might have in securing to
the grantee and to the public the free use of Wolfe street
contiguous to the property conveyed ; it is clear from the
decision in *Hawley's Case*, 33 *Md.*, 270, that it could not
operate as a dedication of the bed of Wolfe street south
of John street.

The decision of the Court below in favor of the appel-
lee, rested upon the construction and legal effect of the
deed from Van Camp to Leach, dated March 30th, 1848.
By that deed, *three* parcels of land were conveyed as
follows :

1st. The triangular piece of ground between the west
side of Ann street, as laid out by Commissioners, under
the Act of the General Assembly of Maryland of Decem-
ber session 1817, ch. 148, and the east side of Bel-Air
road.

2nd. The piece beginning at the corner or intersection
formed by the east side of Ann street aforesaid, and the
south side of John street, as laid out by said Commissioners,
and running thence eastwardly, bounding on the south
side of John street 300 feet to the west side of Wolfe

street, as laid out by said Commissioners, and running thence southwardly, binding on the west side of Wolfe street 117 feet, more or less, to the land of the heirs of Wm. H. Murray; thence westwardly binding on that land, to the east side of Ann street; thence northwardly binding on the east side of Ann street 100 feet, more or less, to the place of beginning, (comprising the lots numbered from *one* to *twelve* inclusive, on a map of " Greenwood," made by A. J. and O. Bouldin, surveyors, in June 1845.)

3rd. The parcel of land beginning at the corner or intersection formed by the south side of John street aforesaid, and the east side of Wolfe street aforesaid, and running thence eastwardly, bounding on the south side of John street 300 feet, to the west side of Washington street, as laid out by said Commissioners, and thence running southwardly, binding on the west side of Washington street 135 feet, more or less, to the land of the heirs of said Murray; and thence westwardly, bounding on that land 300 feet, more or less, to the east side of Wolfe street; and thence northwardly, bounding on the east side of Wolfe street 118 feet, more or less, to the place of beginning, comprising the lots numbered on said map of Greenwood, from *thirteen* to *twenty-four* inclusive.

By granting the *second* prayer of the appellee the City Court instructed the jury that this deed operated as a dedication to the public use, of that portion of Wolfe street lying between the parcels conveyed, and that the appellants were entitled to nominal damages only.

The law governing the subject of the dedication of a street to the public use, has been settled in this State by the cases of *White vs. Flannigan,* 1 *Md.,* 540, 542; *Moale's Case,* 5 *Md.,* 314; *Hawley's Case,* 33 *Md.,* 270; *McCormick's Case,* 45 *Md.,* 512, and *Tinges' Case,* 51 *Md.,* 600.

From these decisions, it would follow that the deed from Van Camp to Leach, dated March 30th 1848, before referred to, standing alone, would furnish evidence of the

intent of the parties, that the portion of the bed of Wolfe street therein mentioned, and upon which the parcels of land conveyed abutted, should remain as a public street for the benefit of the purchaser. By the deed, there was an implied covenant in favor of Leach, the grantee, whereby he became entitled to the right of way or easement in Wolfe street, as appurtenant to his property, which right Van Camp, the grantor, or any one claiming under him as owner in fee of the bed of the street, would be estopped from denying. From this implied covenant arises the presumption of the intent of the parties, to dedicate to the public the use of the street.

As said in *McCormick's Case*, "an intent on the part of the owner to dedicate his land to the particular use alleged, is absolutely essential; and unless such intention is clearly proved by the facts and circumstances of the particular case, no dedication exists. * * * * * As dedication will be presumed where the facts and circumstances of the case clearly warrant it, so that presumption may be rebutted, and altogether prevented from arising, by circumstances incompatible with the supposition that any dedication was intended." 45 *Md.*, 524.

It appears by the proof that on the 21st day of August 1849, Van Camp sold and conveyed to Leach in fee, with other property, the bed of Wolfe street, as the same was described in "Poppleton's plat." By this conveyance Leach became entitled in fee to the whole property extending from the Bel-Air road to Washington street, lying south of John street, embracing the bed of Wolfe street, and this property was afterwards acquired, and is now held, by the appellants.

At the time the deed of August 21st was made to Leach, Wolfe street had not been opened or used as a street or highway, and the proof shows that it was then in such condition, that it could not have been so used, being impassable on account of deep gullies therein; and

that it remained in that condition until it was filled up, enclosed and improved by the appellants, after they had acquired the title, for the purpose of their business as a coal yard.

The facts and circumstances as disclosed by the record, rebut the presumption of an intention by the parties to dedicate to the public use the bed of Wolfe street.

The implied covenant arising upon the deed of March 30th 1848, in favor of Leach, was rescinded and abrogated by the deed of August 21st 1849, whereby Leach acquired the fee simple title to the bed of Wolfe street; and consequently all right of the public to the use of the street; as the same could be derived only from the implied covenant of the parties, no longer existed.

As we have before said, at the time of the proposed condemnation in this case, the appellants were the owners of the property south of John street, on each side of Wolfe street, and also the owners of the bed of Wolfe street, lying between the same, and which the city now proposes to open and condemn, and for which under the instructions of the City Court, nominal damages only were allowed by the jury.

The case is almost identical with *Moale's Case*, (5 *Md.*, 314.) There Moale was held to be entitled to compensation for Lot No. 9, lying in the bed of East Biddle street, notwithstanding he had purchased other lots designated on the plat, and described as bounding on East Biddle street. But inasmuch as he was the owner of the lots on both sides of the street, that is to say, the lot on the south-west corner of Charles and Biddle streets; lot No. 10 on the south-east corner of Charles and Biddle streets, and lot No. 9, the bed of the street lying between them— the Court said he was "just as much entitled to be compensated for lot No. 9, as would have been the original proprietor of it, in the absence of all dedication. In regard to it, there is no supervening or conflicting right,

as there is in regard to lot No. 3. The appellant owns the entire line of the three lots bounding on Charles street, whilst in relation to lot No. 3 ; before it became the property of the appellant, Judge Frick had acquired a title to lot No. 4, from the same grantor as appellant obtained his to lot No. 2, which gave Judge Frick a right to lot No. 3, as a public street."

In that case, the situation of lot No. 9, and the title of Moale thereto, and to the contiguous property, was similar to the situation of the appellants' lot in the bed of Wolfe street now sought to be condemned ; and for the reasons before stated, and upon the authority of *Moale's Case*, we think the appellants are entitled to substantial damages for their property in the bed of Wolfe street, south of John street; and therefore it was error to grant the *second* prayer of the appellee.

The judgment will be reversed, and a new trial ordered.

*Reversed and new trial.*