# THE PHILADELPHIA, BALTIMORE & WASHINGTON RAILROAD COMPANY,
## A Body Corporate,

### *vs.*

# THE MAYOR AND CITY COUNCIL OF BALTIMORE, a Municipal Corporation, and THE COMMISSIONERS FOR OPENING STREETS IN THE CITY OF BALTIMORE.

*Streets: dedication; acceptance necessary; need not be express; abandonment; mere non-user not sufficient; question for jury. Opening streets: and grading; different proceedings; assessment for receipts; benefits.*

The mere dedication of a street to public uses, by means of deeds and plats, does not make the street a public highway,—finally and irrevocably.                                    p. 372

In order to effect the dedication of a street there must be acceptance of it by the municipal authorities.          p. 372

But such acceptance may be proved or inferred by acts *in pais,*—such as repairs knowingly made and paid for by the authority which has the legal power to adopt a highway,—or from a long use by the public.                           p. 372

Acceptance of a street must be proved by the party asserting its dedication.                                          p. 372

The mere non-user of an easement for even more than twenty years, does not afford conclusive evidence of its abandonment.
                                                            p. 379

But non-user, for a prescriptive period, united with an adverse user of the servient estate, inconsistent with the easement, will extinguish it.                                    p. 379

The question of the extinguishment of an easement is one that should be submitted to the jury, under proper instructions,

if there is any evidence legally sufficient from which they might find that it had been extinguished.                    p. 382

The opening of a street is an essentially different system from that of grading and paving streets.                    p. 383

Under an ordinance providing for the condemning and opening of a street, the Commissioners for Opening Streets in Baltimore have no power to assess benefits for grading.        p. 384

Chapter 125 of the Acts of 1914 does not authorize the Commissioners for Opening of Streets in opening Linwood avenue, to grade the same and assess for benefits.        p. 384

*Decided November 14th, 1917.*

Appeal from the Baltimore City Court.   (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER and CONSTABLE, JJ.

*Shirley Carter* (with whom were *Bernard Carter & Sons* on the brief), for the appellant.

*George Arnold Frick, Assistant City Solicitor* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

A jury of inquisition in the Baltimore City Court found that the property of the appellant situated at the southeast corner of Boston and Patuxent streets (now called Linwood avenue) would be benefited to the amount of fifteen hundred dollars by the condemning and opening of Linwood avenue for a width of sixty feet from Boston street to the waters of the Patapsco River.   The avenue, which is about three hundred feet long, was being opened under Ordinance No. 284, approved June 9, 1913.   The Canton Company of Baltimore on May 1, 1846, while owner of the land now forming the bed of Linwood avenue, granted and conveyed to Alfred Munson, his heirs and assigns, the lot of ground now owned

by the appellant and against which the assessment complained of in this case was made. The deed described the lot granted as follows: "Beginning for the same at the point formed by the intersection of the east side of Patuxent street with the south side of Elliott street, and running thence easterly bounding on Elliott street 45 15/100 perches to Canton street, as laid out upon the Canton Company's plat; thence bounding on Canton street southwardly 35 8/10 perches to a point on Boston street, so as to intersect a line drawn north, northeastwardly up the west side of that part of Canton street laid out upon the Canton Company's plat at right angles with Boston street; then reversing the line so drawn and bounding thereon southwestwardly 32 3/10 perches to the Port Warden's Line; thence bounding on that line and parallel to Boston street, north 23 degrees, west 48 3/10 perches, to intersect a line drawn south, southwestwardly along the east side of that part of Patuxent street laid out upon the Canton Company's plat at right angles to Boston street; then reversing the line so drawn, and bounding on Patuxent street north northeastwardly 32 3/10 perches to a point on Boston street so as to intersect a line drawn southwardly along the east side of that part of Patuxent street laid out at right angles with Elliott street; then reversing the line so drawn and bounding thereon along the east side of Patuxent street northwardly 20 3/10 perches to the place of beginning." This lot by mesne conveyances passed from Alfred Munson to Edward Brooke, who on the 28th day of February, 1877, conveyed the lot to the Philadelphia, Wilmington and Baltimore Railroad Company, the predecessor in title of the appellant. In the Brooke deed the property is described as binding "along the east side of Patuxent street."

Patuxent street, now known as Linwood avenue, has never been accepted or opened by the public authorities, but under the long established law of this State there can be no doubt that under the terms of the deeds from the Canton Company to Munson and from Brooke to the appellant's predecessors in

title the grantees acquired a right of way over the bed of Patuxent street or Linwood avenue from Boston street to the waters of the Patapsco River.

It was said in *Hawley* v. *Baltimore,* 33 Md. 270, that: "The law is now too well settled to admit of any doubt, that if the owner of a piece of land lays it out in lots and streets, and sells lots calling to bind on such streets, he thereby dedicates the streets so laid out to public use. This rule is founded upon the doctrine of implied covenants, and the dedication will be held to be co-extensive with the right of way acquired as an easement by the purchaser. It is upon the implied covenant in the grant to him that the dedication to public use rests, and such dedication must necessarily be measured by the limits of the right he has acquired by virtue of his grant. * * * The true doctrine is, as we understand it, that the purchaser of a lot calling to bind on a street, not yet opened by the public authorities, is entitled to a right of way over it, if it is of the lands of his vendor, to its full extent and dimensions only until it reaches some other street or public way. To this extent will the vendor be held by the implied covenant of his deed and no further." *White* v. *Flannigan,* 1 Md. 529; *Moale* v. *Baltimore,* 5 Md. 321; *Tinges* v. *Baltimore,* 51 Md. 600; *Baltimore* v. *Frick,* 82 Md. 77.

It was said in *Flersheim* v. *Baltimore,* 85 Md. 489, that: "The dedication takes place by force of the terms of the deed. It confers on the grantee the right to the advantages of a public street binding on his property. Of course the grantor is not under an obligation to construct the street; but the grantee has a right of way over the bed of the street described in the deed, and the right to use it as a street. This easement relieves him from the burden of paying benefits when the street is condemned and opened by public authority. It also necessarily enures to the benefit of the public. The right acquired is to a public street; to be used by the general public, subject to the control of the municipal authority, with the incidental advantages which it may bestow upon

it by the expenditure of the corporate money. The dedication of the land of the grantor extends to the nearest street or public way." "But the dedication of the street to public use by the plats and deeds does not make the street a public highway. Such a conveyance does not become final and irrevocable until there has been an acceptance of it on the part of the public authorities. *Baltimore* v. *Broumel*, 86 Md. 153; *Valentine* v. *Hagerstown*, 86 Md. 486; *New Windsor* v. *Stocksdale*, 95 Md. 212.

"It is said in *Kennedy* v. *Cumberland*, 65 Md. 514, that 'any individual may lay out a thoroughfare through his land, but such dedication does not impose upon the county or municipality the duty of improving it or keeping it in repair. There must be an acceptance of the dedication before this duty can arise.'

"Not only is such an acceptance necessary, but it must be proved by the party who asserts the way to be a public way; and it may be proved when expressed by the record, or it may be implied from repairs made and ordered, or knowingly paid for by the authority which has the legal power to adopt a street or highway, or from long user by the public." *Whittington* v. *Commissioners of Crisfield*, 121 Md. 387.

The contentions of the appellant are: *first*, that it is entitled, under the deeds above referred to, to an easement or right of way over the bed of Linwood avenue, and, therefore, under the decision in *Flersheim's case, supra*, it is relieved from the burden of paying benefits when the avenue is condemned and opened by the City; *secondly*, that under ordinance No. 284, under which the proceedings for opening the avenue were taken, it could not be assessed benefits which would accrue to the lot from the grading or paving of the avenue, because the ordinance did not authorize the Commissioners for opening streets to grade or pave the avenue, but limited their power to "the condemnation and opening of said avenue." The position taken by the City is that there was evidence in the case legally sufficient to show that the easement of way claimed by the appellant had been lost by aban-

donment or adverse user by the Canton Company and its tenants, and, therefore, the appellant was liable to assessment for benefits. There are no exceptions to testimony, and the contentions of the parties are presented by the action of the trial Court upon the prayers and special exceptions. The City submitted sixteen prayers. The Court granted the second, sixth, seventh and fourteenth prayers and refused the others. The granted prayers are here inserted:

*Defndts.' 2nd Prayer.*—"The jury are instructed that the burden of proving that any benefit will accrue to the property of the Philadelphia, Baltimore and Washington Railroad Company by the opening and grading of Linwood avenue is upon the City of Baltimore, but that such benefit and the amount thereof need be established only by the preponderance of the testimony. They are not to be governed by the findings of the Commissioners for Opening Streets."

*Defndts.' 6th Prayer.*—"The jury are instructed that, if they believe from the evidence that, during any period of twenty years subsequent to the date of the deed from the Canton Company to Munson in 1846, the property lying in the proposed bed of Linwood avenue south of Boston street was held and used by the Canton Company and its tenants and agents openly in such a way as to prevent the actual physical use thereof as a street, then all rights of the Philadelphia, Baltimore and Washington Railroad Company in and to the said land for purposes of a public street have been lost and the property of the said railroad company adjacent to and abutting thereon is subject to assessment in this proceeding for whatever amount of benefits the jury may find will directly accrue to it for the opening of said street."

*Defndts.' 7th Prayer.*—"The jury are instructed that, if they shall find from the evidence that the property in the proposed bed of Linwood avenue south of Boston street has been used since the date of the deed from the Canton Company to Munson by the Canton Company, its agents and tenants, with the acquiescence of the said railroad company or its predecessors in title, in such a way as to preclude the use

of the said property for a public street, then all rights of the
said railroad company to the said street have been lost and
the property of the railroad company adjacent to and abut-
ting thereon is subject to assessment in this proceeding for
whatever amount of benefits the jury may find will directly
accrue to it for the opening of said street."

*Defdnts.' 14th Prayer.*—"The Court instructs the jury
that, although the Canton Company, by its deed to Munson
in 1846, conveyed to the predecessors of the appellee, the
Philadelphia, Baltimore and Washington Railroad Company,
and through them to the appellee, a right of way or right to
a street over the property covering the proposed bed of Lin-
wood avenue south of Boston street, but that the said Canton
Company subsequently let to its tenants, for any consecutive
period of twenty years subsequent thereto, the said property
for private business purposes, restricting its use to such pur-
pose and permitted the said property to be enclosed and
fenced off from the public and all persons not using the said
property with the assent of the said tenants, and that the said
appellee recognized and assented to the use and occupation
of the said premises, for said private business purposes, by
leasing a portion of its own property in aid and furtherance
of the business conducted in and about said property by the
tenants of the Canton Company, then all rights of the appel-
lee in and to the said property have been lost to the appellee."

The appellant submitted eleven prayers for instructions
to the jury. The Court granted its one and one-half, fourth,
fifth, seventh, eighth, ninth and tenth prayers and refused
the others. The granted prayers are as follows:

*Pltff.'s 1½ Prayer.*—"The Philadelphia, Baltimore &
Washington R. R. Co., the appellee in this case, prays the
Court to instruct the jury, as matter of law, that if the jury
find the agreement between the parties to this case offered
and read in evidence, and the deed dated May 1, 1846, from
Canton Company of Baltimore to Alfred Munson, offered
and read in evidence, and the deed dated February 28, 1877,

from Edward Brooke to The Philadelphia, Wilmington & Baltimore Railroad Company, then the true legal effect and construction of said deeds and said agreement in conjunction with Chapter 478 of the Acts of the General Assembly of Maryland of the year 1902, is that the Philadelphia, Baltimore and Washington Railroad Company, the appellee herein, is the owner of the leasehold interest for 99 years renewable forever in the lot of land on the southeast corner of Boston street and Linwood avenue (formerly Patuxent street) binding on the east side of Linwood avenue for its whole length from Boston street to the waters of the Patapsco River, and by virtue of such ownership in said lot of land is now entitled to a right of way or easement of passage over all or any part of Linwood avenue (formerly Patuxent street) from the waters of the Patapsco River to Boston street, unless the said railroad company or one of its predecessors in title has abandoned, released or otherwise lost said right of way or easement."

*Pltff.'s 4th Prayer.*—"The Court instructs the jury, as a matter of law, that nothing shall be considered a benefit which does not enhance the value of the property of the railroad company on the east side of Linwood avenue."

*Pltff.'s 5th Prayer.*—"The Court instructs the jury that increased facilities for travel enjoyed by the party whose property is assessed, in common with the community in general, is not an element to be considered in estimating benefits."

*Pltff.'s 7th Prayer.*—"The Court instructs the jury that before they can find that the railroad company in this case, or any of its predecessors in title, has or have lost the right of way over Linwood avenue appurtenant to its property bounding on the east side of Linwood avenue from Boston street to the waters of the Patapsco River by adverse possession of the Canton Company, they must find that the possession of the Canton Company of the bed of Linwood avenue has been adverse, exclusive and continuous for twenty years."

*Pltff.'s 8th Prayer.*—"The Court instructs the jury, as matter of law, that no right of way or easement can be lost to the owner thereof by adverse possession, unless the person claiming adverse possession thereof has had a possession of the land over which the easement exists for 20 years, and such possession must be adverse, that is, hostile, continuous and exclusive for the period of 20 years."

*Pltff.'s 9th Prayer.*—"The Philadelphia, Baltimore & Washington Railroad Company prays the Court to instruct the jury, that in assessing benefits in this case, the jury can not indulge in vague speculation or conjectures, but must find from the evidence, or the jury's view of the property, that there has been or will be, an increase in the market value of said company's property by the opening of Linwood avenue as the result of said opening, and such increase in the market value must result from some benefit, other than the general benefit to the community at large; and nothing can be considered a benefit that does not enhance the value of the property."

*Pltff.'s 10th Prayer.*—"The Philadelphia, Baltimore & Washington Railroad Company prays the Court to instruct the jury, that if the jury find from the evidence that in order to make reasonable use of Linwood avenue at the established grade mentioned in the evidence, the said company will have to fill in its property to bring the same to the established grade of Linwood avenue to have reasonable use thereof, then in assessing benefits against said property the jury may deduct from the amount of the benefits found by them, if any, the amount of the cost to the company of such filling in as the jury shall find the company will sustain."

The appellant filed special exceptions to the fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, thirteenth and fourteenth prayers of the City, but as all the prayers to which special exceptions were filed were refused, except the sixth, seventh and fourtenth, we need only consider the special exceptions to those granted prayers. The exceptions to

the sixth prayer were that "there is no evidence legally suffi-
cient in this case from which the jury can find the following:
That during any period of twenty years subsequent to the
date of the deed from the Canton Company to Munson in
1846, the property lying in the proposed bed of Linwood
avenue south of Boston street was held and used by the Can-
ton Company and its tenants and agents openly in such a
way as to prevent the actual physical use thereof as a street,
or from which a jury can find benefits to the property of the
Philadelphia, Baltimore & Washington Railroad Company
directly accruing to it from the opening of said street." To
the seventh prayer, "because there is no evidence in this case
legally sufficient from which the jury can find the following:
(*a*) That the property in the proposed bed of Linwood ave-
nue south of Boston street has been used since the date of the
deed from the Canton Company to Munson by the Canton
Company, its agents and tenants, with the acquiescence of
the said railroad company or its predecessors in title, in such
a way as to preclude the use of said property for a public
street; (*b*) that any benefits will directly accrue to the prop-
erty of the railroad company for the opening of said street;
and because it submits to the jury a question of law, to wit,
what will constitute such a use by the Canton Company, and
what will constitute such acquiescence by the railroad com-
pany or its predecessors in title as to preclude the use of said
property for a public street." To the fourtenth prayer, "be-
cause there is no evidence in this case legally sufficient from
which the jury can find the following: (*a*) that the said Can-
ton Company, subsequently let to its tenants for any consecu-
tive period of 20 years subsequent thereto the said property
for private business purposes, restricting its use to such pur-
poses and permitted the said property to be enclosed and
fenced off from the public and all persons not using said
property with the assent of said tenants; (*b*) that the said
appellee recognized and assented to the use and occupation
of said premises for said private business purposes by leasing

a portion of its own property in aid and furtherance of the business conducted in and about said property by the tenants of the Canton Company." The Court overruled these special exceptions, and the appellant excepted. The appellant also excepted to the granting of the City's second, sixth, seventh and fourteenth prayers, and to the refusal of the defendant's first, third, sixth and eleventh prayers.

The appellant's first prayer asked the Court to rule as a matter of law that upon the hypothesis of facts stated in the prayer that it is now entitled to a right of way or easement over all or any part of Linwood avenue from the waters of the Patapsco River to Boston street, "unless the said railroad company or one of its predecessors in title has abandoned, released or otherwise lost said right of way or easement, and there is no evidence in this case legally sufficient from which the jury can find that the appellee railroad company or any of its predecessors in title has abandoned, released or otherwise lost said right of way or easement." Its second prayer assumes the existence of the easement of way as an appurtenance to its lot. Its sixth prayer asked the Court to tell the jury that they were not to be governed by the amount of money paid by the City, or required to be paid by it to the Canton Company for any interest the Canton Company may have had in the land constituting the bed of Linwood avenue from Boston street to the Patapsco River. There was no evidence in the case upon which to base this prayer, and it was properly refused. Its eleventh prayer asks the Court to instruct the jury as a matter of law, that if they found "the agreement between the parties to this case, filed herein and read in evidence, and the deed from the Canton Company to Alfred Munson, dated May 1st, 1846, and the deed from Edward Brooke to the Philadelphia, Wilmington & Baltimore Railroad Company, then there is no evidence in this case legally sufficient from which they can find that the property of the respondent railroad company on the southeast corner of Boston street and Linwood avenue will be

benefited by the formal opening of Linwood avenue, and that, therefore, any assessment of benefits should be merely nominal." This prayer, in legal effect, asked the Court to rule as matter of law that there was no legally sufficient evidence to show that the right of way acquired under the deed referred to had been lost by abandonment, adversary possession, or in any other manner. The defendant's third prayer is as follows: "The Court instructs the jury, as matter of law, that the grading and paving of Linwood avenue are not elements to be considered by the jury in assessing benefits in this proceeding."

It will be seen by the granted prayers that the Court submitted to the findings of the jury the questions as to whether the right of way claimed by the appellant had been lost by adversary possession or abandonment. We will first consider whether there is found in the record evidence legally sufficient to have justified the Court in submitting these questions to the jury over the objections of the appellant, and we will then consider the action of the Court in granting the City's second, sixth and seventh prayers and in refusing the appellant's third prayer.

1. In *Canton Company* v. *Baltimore & Ohio Railroad Company,* 99 Md. 202, this Court said that it has been frequently held "that while non-user is strong evidence tending to show abandonment, yet it will not *per se* operate as abandonment, unless there is some decided and unequivocal act of the owner inconsistent with the continued existence of the easement; or unless the non-user has been for a considerable period, without a valid reason or excuse for its neglect. *Eddy* v. *Chace,* 140 Mass. 471; *People* v. *Albany & Vermont R. R. Co.,* 24 N. Y. 261."

This Court in *Vogler* v. *Geiss,* 51 Md. 410, has said that while a party entitled to a right of way or other mere easement in the land of another may abandon and extinguish such rights by acts *in pais,* and without deed or other writing; yet that such acts relied on to effect such results " 'must

be of a decisive character'; and whether they amount to an abandonment or not 'depends upon the intention with which it was done, and that is a subject for the consideration of the jury. A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time' "; and in *Canton Company* v. *Baltimore City*, 106 Md. 69, we said: "Although it is conceded that mere non-user of an easement even for more than twenty years will not afford conclusive evidence of its abandonment, such non-user for a prescriptive period united with an adverse use of the servient estate inconsistent with the existence of the easement will extinguish it."

As we understand the evidence the Court could not decide as a matter of law that there was no evidence in the case legally sufficient from which the jury might have found that the right of way had been extinguished. Thomas J. McCosker was asked if he was acquainted with the property which it was proposed to turn into Linwood avenue and he testified that he was, and that he had rented that property from the Canton Company for a ship yard in 1874, and remained there in possession from 1874 to 1896, a period of about 22 years; that he paid a rental of $200 a year and with the understanding that the tenant on the west side of Patuxent street, who occupied the property from Boston street to the Water was to be allowed free egress and ingress to and from that property; that there was no agreement to extend that right to anyone else, and that during that period the *locus in quo* was never used as a street. When McCosker rented the property in 1874 the street was very rough from Boston street down, and had been occupied by stevedores for storing slag, and there was a fence on each side of the street. The tenant on the west side of the street at the time McCosker rented the property was the Evans & Day Company, and that tenant was succeeded by the Weinbrenner Company, which company in 1888, by the permission of McCosker, was

allowed to put gates—a large one for the accommodation of vehicles and a smaller one for foot passengers,—at Boston street to protect its property from trespassers. A watchman was placed in charge of these gates and the larger gate was kept locked on Sundays and holidays. There does not appear to have been any general use made of the street by the public, but that such use as was made of it was confined to persons having business with McCosker and other tenants of the Canton Company. Neither Munson, nor Brooke, nor the appellant ever actually used the street, and there are facts and circumstances in the case from which it could be found that the appellant had knowledge of the use made by McCosker of the street and made no objection to the character of the use and the nature of the dominion he was exercising over it. In 1886 McCosker rented from the railroad company a strip of about fifty feet facing the water and lying on the east side of the street which he used in connection with the business he was conducting on the strip of land in question. After McCosker left, the strip remained vacant until it was leased to Charles L. Rohde & Sons by the Canton Company. In one of the leases made by the Canton Company to Rohde & Sons, and which appears in the record, it shows that the entire bed of Patuxent street from Boston street to the water was included, and that the strip was to be used for the purpose of a ship yard and for no other purpose without the written consent of the Canton Company. Theodore H. Rohde, a member of the firm of Charles L. Rohde & Sons, lessees, testified that the property leased had been occupied by Mr. McCosker. Rohde & Sons occupied the property for about twelve years during which time it was fenced on both sides, and gates were maintained across it at Boston street and only persons who had business with the firm were permitted to go on the property. The strip was included in the assessment of the Canton Company, and it paid taxes on it since 1876. Rohde & Sons, as did McCosker, leased from the appellant a strip of land on the east side of the street which it used in aid of its business, but it is mani-

fest, we think, that the Court could not decide, as a matter of law, that such acts of dominion, user, and obstruction exercised and done either by McCosker or Rohde & Sons were done by them or either of them in their capacity as tenants of the appellant. There is other evidence in the record to which we might refer, but it is unnecessary to prolong this opinion by discussing it. The evidence to which we have made reference is sufficient, under the cases cited, to have justified the Court in submitting the question of the extinguishment of the easement to the jury as was done by the prayers above set out, and in refusing the appellant's first, second, sixth and eleventh prayers, and overruling the special exceptions filed to the plaintiff's sixth, seventh and fourteenth prayers.

2. There remains for consideration the elements of benefits which it was proper for the jury to consider in making the assessment against the appellant. It was assessed benefits not only for such as might result to its property from the *condemnation and opening* of the street, but also for such as might result from the grading of the street. The ordinance under which the proceedings were taken directed the Commissioners for Opening Streets to *condemn* and *open* Linwood avenue. They were not authorized to grade the avenue. Witnesses called by the City on the question of benefits testified that the appellant's land would be much benefited by the grading of the avenue. It is provided by the Act of 19,12, Chapter 32 (Revised Edition of the City Charter, 1915, section 172) that the Commissioners for Opening Streets "shall be charged with the duty of opening, extending, widening, straightening, and, *if the ordinance so provides, grading,* or closing any street, lane, alley, or part thereof, situated in Baltimore City whenever the same shall have been directed *by ordinance* to be done, and shall perform such other duties as the Mayor and City Council may, *by ordinance,* prescribe."

It was held in *Patterson v. Mayor, etc., of Baltimore,* 130 Md. 645, that prior to the passage of that Act "there was no provision in the Charter for an ordinance to include the open-

ing *and grading* of a street but it was first intended to require
the City to first condemn the land for the opening (if it was
not dedicated or otherwise acquired), and then provide for
the grading, paving and curbing." Then after noting the
changes and exceptions made by the Act of 1912, CHIEF
JUDGE BOYD said: "But regardless of that it is clear that
the Legislature itself made a distinction between opening
and grading, paving or curbing, and therefore it is difficult
to see how an ordinance for opening a street can be construed
to include the grading, paving or curbing. * * * Our examina-
tion of the authorities strengthens the views we have on the
subject. It was said in *Reed* v. *City of Toledo,* 18 Ohio,
161: 'By the term "opening" we do not understand the im-
provement of a street or highway by grading, culverting, etc.;
the term is generally (we think always) clearly distinguish-
able from such kind of improvement. The term "opening"
refers to the throwing open to the public what before was
appropriated to individual use, and the removing of such
obstructions as exist on the surface of the earth, rather than
any artificial improvement of the surface. And we think in
the charter this distinction is very clearly drawn.

"Or, as said in 3 *Dillon on Munc. Cor.* (5th Ed.) 1042:
'So authority to open a street and assess the damages on the
property benefited does not give the power to assess for any-
thing more than opening the street and paying for the right
of way; it does not include the power to assess other prop-
erty for the improvement of the street by grading, culvert-
ing, and the like.'

"In *Municipal Corporations in Maryland,* by the present
Attorney General (section 12), it is said: 'The two systems
for opening and condemning streets and for grading and pav-
ing them are essentially different from each other. They are
provided for by different laws and ordinances, executed by
different officers and governed by different rules and regula-
tions.' "

It would, therefore, seem clear that the Commissioners for
Opening Streets had no power under the ordinance to *grade*

Linwood avenue, and that the appellant could not in these proceedings be assessed benefits resulting from the grading of the street. The City's second prayer which permitted the jury to take into consideration the benefits to the appellant's property resulting from grading the avenue should not have been granted. The jury should have been instructed that the grading of Linwood avenue was not an element to be considered by them in assessing benefits against the appellant. It was not attempted to charge the appellant with benefits arising from the *paving* of the street and no evidence was offered upon that subject, and had not the appellant's third prayer referred to the paving of Linwood avenue we would have no hesitation, under the terms of the ordinance and the evidence offered as to benefits for grading in approving it. While the City's sixth and seventh prayers upon the hypotheses of facts therein stated told the jury that the appellant's property was subject to assessment for benefits directly resulting from the opening of the street, they did not, as they should have done, limit or confine the assessment to such benefits as the jury might find directly accrued to the appellant from "the condemning and opening of Linwood avenue," as authorized by ordinance. In the form in which these prayers were granted, and in view of the evidence upon the question of grading, they were likely to, and no doubt did, result in injury to the appellant.

The City relies upon the Act of 1914, Chapter 125, to support its right to assess benefits for grading, but the answer to this is two-fold: *first;* the Commissioners for Opening Streets had no power to *grade* Linwood avenue in the absence of an ordinance authorizing them to do so; and *secondly,* that Act was not intended to apply to a situation and condition such as we have in this case. This, we think, is evident by the plain terms of the Act. It follows from the views we have expressed that the rulings of the Court below on the City's second, sixth and seventh prayers must be reversed.

*Rulings reversed, with costs to the appellant, and case remanded for a new trial.*