## GEORGE H. STEUART *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE, and others.

A square designated as such upon Poppleton's plat of the city of Baltimore, and marked by two boundary stones, but which has never been used by the public for any purpose, but has constantly been held by the owners of the land, and has never been purchased by the city authorities, or conveyed to them, *is not* a square for public purposes, contemplated by the act of 1817, ch. 148, sec. 13.

The owner has the same right to improve the land in this square that he has to improve any other portion of his property within the city limits, and the city authorities have the right to open a street through it in the *same manner* as through the private property of any other person; there is no necessity for them to *close* this square, because it never was, in legal contemplation, a pub'ic square.

Notice that application will be made to the city authorities "to open and condemn Baltimore street from the east side of Fulton street to the city limits," describes with sufficient accuracy and distinctness the street designed to be opened, and is not defective in this particular.

Where a law secures the trial by jury *upon an appeal,* it is no violation of a constitutional provision securing that right, though such law may provide for a primary trial, *without* the intervention of a jury, because the party, if he thinks proper, may have his case tried by a jury, before it is finally settled.

The 46th section of the 3rd art. of the constitution provides, that the "Legislature shall enact no law authorizing private property to be taken for public use, without just compensation, as agreed upon between the parties, *or awarded by a jury,* being first paid or tendered to the party entitled to such compensation." HELD:

1st. That the Legislature may pass a law taking private property for public uses, if provision be made for compensation first to be paid or tendered to the owner, the ascertainment of which is to be made by contract with him, or by the assessment of commissioners, giving the owner the right of appeal from their decision, and securing him a *trial by jury* before the appellate tribunal, provided the appeal be taken in some specified reasonable time.

2nd. If the owner does not appeal within the time prescribed, and the compensation assessed be paid or tendered, the property may be taken for public use; the neglect or refusal to appeal is considered a waiver or abandonment of the right to have the damages awarded by a jury, and as an agreement to take the compensation determined by the assessment.

3rd. The act of 1838, ch. 226, and the ordinance of the city authorities of Baltimore city, of 1850, ch. 17, for the opening of streets, &c., passed in pursuance thereof, giving the right of appeal from the decisions of the commissioners to the city court, and any ordinance for the opening of a particular street thereunder, are therefore constitutional and valid.

The constitutional prohibition against taking private property for public use, until compensation be first paid or tendered, means *taking* the property from the owner and *actually* applying it to the use of the public, and not the survey and other preliminary measures necessary in such cases.

The protection is sufficient if the owner is secured in the use and enjoyment of his property until the damages he may sustain are constitutionally ascertained and paid, or tendered, and until then a street cannot be opened or used, but an entry to grade or prepare the ground for that purpose, is illegal.

APPEAL from the Circuit Court for Baltimore city.

The bill in this case was filed by the appellant, praying for an injunction to restrain the city authorities from further proceedings under ordinance No. 58, approved June 8th 1853, for the opening, grading and paving of Baltimore street, from the east side of Fulton street to the city limits.

It alleges, in substance, that this ordinance was inoperative and invalid, because, in attempting to open said street in a continuous line, it passes through and conflicts with a square lying on the grounds of the complainant, laid out by the commissioners, under the act of 1817, ch. 148, as a public square, and marked on Poppleton's plat as "Dr. Stewart's," but commonly known as "Maryland Square," and by them dedicated, delineated and set apart for public purposes; and that said square can only be opened or closed on definite notice for the opening or closing of said square in whole or in part, and then only by means of regular and valid proceedings for that purpose, in pursuance of an ordinance duly enacted for that express purpose, in conformity with published notice, and the existing acts of Assembly in relation thereto.

It further alleges, that the Mayor and City Council, disregarding the existence of said square, and without any notice having been published for the opening or closing thereof, improvidently passed the said ordinance No. 58, which, complainant insists, they had no right to do; and that the commissioners for opening streets were about to open said street through the grounds of complainant, and for 360 feet through said square, which opening, without first lawfully closing the square, he alleges, will work him irreparable injury.　He then avers, that he is willing that Baltimore street should be opened in a continuous line to the city limits, if said square be first closed in a regular and valid manner, but insists that the opening of it, without first closing the square, would leave his ground no longer available for and valuable as a square laid out in the midst of his property, (particularly after the same is deformed by a street run through it,) and also at the same time leave it unavailable and of no value for other purposes, inasmuch as the ground would still remain marked out, bounded, dedicated and set apart for public use, and, therefore, not available for the erection of buildings.

Upon this bill the court granted the injunction prayed for.

The answer of the city authorities admits that the following notice (which was duly published,) was the only notice published, in relation to the application for the opening of Baltimore street, before the passage of the ordinance No. 58, and that said ordinance was passed in pursuance thereof.

" Notice is hereby given, that application will be made to the Mayor and City Council of Baltimore, at its next session, to open and condemn Baltimore street, from the east side of Fulton street to the city limits."

They deny that this ordinance was invalid or inoperative, or that it was not authorized by the act of 1838, ch. 226, under which they claim and exercise the power of laying out, opening or closing streets, squares, lanes and alleys, but admit, that in pursuance of said ordinance, Baltimore street was to be opened in a continuous line, and to pass through the square referred to in the bill.　But, whilst they admit that this

square was delineated on Poppleton's plat by the commissioners, under the act of 1817, ch. 148, they deny that said commissioners did or could dedicate the same to public uses, or that Poppleton's plat is binding on them, in reference to streets or squares delineated thereon, or that any other or stricter proceedings are required to open or close a street marked thereon, than would be required to open or close a street or square not found thereon. They deny that said alleged square has ever been opened, or that it has any actual or legal existence, and aver that, under the act of 1838, ch. 226, they have full power to decide how or where streets or squares shall be opened, and that having determined, after due notice, to open Baltimore street in a continuous line from Fulton street to the city limits, the validity of the ordinance No. 58, is in no degree impaired or affected by passing through that part of complainant's property delineated as a public square, any more than by passing through any other part of his property.

They further admit, that the commissioners for opening streets have, under this ordinance, proceeded to locate and open said street through complainant's property, and aver that all proceedings in the premises have been in strict conformity with law, and a copy of the return of the commissioners is filed with the answer. They then insist, that if there was any illegality or irregularity in the official proceedings in reference to the opening of this street, the complainant had the right to appeal to the Criminal Court of Baltimore city for redress, and not having availed himself of that remedy, he has no right to apply to the Circuit Court to assume jurisdiction over the subject matter.

The answer further states and charges, that the sums for which the complainant was assessed by the commissioners, for benefits derived by him from the opening of this street, were paid by him by a draft drawn upon the city register, to be paid out of the moneys due by the city to complainant, for damages assessed to him for opening said street through his property, and insists that this payment, for benefits and receipt

of damages, amount to a ratification by him of all previous proceedings, and a waiver of all right on his part to object to the same. They further deny that any irreparable or other injury will ensue to the complainant by the opening of said street.

The answer then sets up an agreement between complainant and other owners of the property through which the street passes, as a reason why such owners were necessary and proper parties to the bill, which they insist is defective in this respect, and the injunction should be dissolved, and the bill dismissed.

The testimony of Williams and Mayer, as to the location of this square, is sufficiently stated in the opinion of this court. The return of the commissioners, filed with the answer, shows that the complainant was allowed, for damages for the opening of this street, the sum of $3942.50, and was assessed, for benefits, in the sum of $3154.39, which latter sum, it was admitted, was paid by him by a draft for that amount on the city register, in favor of the city collector, payable out of the former sum awarded to him for damages.

The court below (KREBS, J.,) decided—1st. That the ground in question never was a public square, open or otherwise; never was dedicated for public use, and that the city never acquired any right or claim to it as a square, or for public purposes; and that the title of the complainant to it, is unaffected by any thing that the city authorities have done in reference to it, and that no proceedings were necessary to close it. 2nd. That the receipt by the complainant of $3154.39, from the register, for damages allowed him, and the payment by him of that amount to the collector, for benefits assessed to him, is a complete *estoppel in pais*, and that complainant cannot now insist that this property is a public square dedicated to public uses. 3rd. That the act of 1838, ch. 226, providing for the opening of streets in the city of Baltimore, does not conflict with the 46th section of the 3rd article of the constitution.

The court thereupon passed an order dissolving the injunc-

tion and dismissing the bill, from which the complainant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Neilson Poe* and *John Nelson* for the appellant, argued:

1st. That Poppleton's plat is a plan of the city of Baltimore, prepared by commissioners fully authorised by law to lay down streets, lanes, squares, &c., and that the laying down of any street, lane, square or alley on said plat was such a delineation thereof as a street, square, &c., that the same cannot lawfully be opened, closed, widened or in any manner altered, except by virtue of an ordinance duly passed, upon proper notice, for the *express purpose* of closing, opening, widening or altering the same, and the ordinance in question for opening Baltimore street was, therefore, invalid and insufficient to authorise the laying or opening of said street through the ground embraced by the said square.   There never has been an instance known in which an ordinance to *widen* or *close* a street has been passed under notice to *straighten* or *open* one, yet in this case a *square* is sought to be *closed* under an ordinance to *open* a street, passed upon notice to *open* it.   We submit that such a proceeding is totally irregular and invalid.

2nd. That the act of 1838, ch. 226, so far as it authorises the Mayor and City Council to take private property for public use without compensation, as agreed upon between the parties or awarded by a jury, being first paid or tendered to the party entitled to such compensation, is in conflict with the 46th section of the 3rd article of the constitution.

We admit, that as to all matters *within the jurisdiction* of the city court under this act, a court of equity has no authority to interfere, and we concede this upon general principles as well as upon authority.   But the question here is, whether this is a matter within that jurisdiction?   We do not object to any irregularity, in the proceedings under the ordinance, by the commissioners, but upon the broad ground, that the whole proceedings by the city authorities are *void* and totally without

64      v.7

*authority;* and upon this ground we have the right to go to a court of equity for relief. This act provides for an appeal from the decision of the *commissioners* in relation to the assessment of *damages* and *benefits.* It gives no right of appeal for the purpose of testing the *constitutionality of an ordinance* of the city; no such appeal is provided for. Nor does the ordinance of 1850, No. 17, provide for such an appeal. The very question then as to the jurisdiction of the equity courts in such cases is decided in the case of *Alexander vs. Mayor & City Council,* 5 *Gill,* 389. The case of the *Methodist Church vs. Mayor & City Council,* 6 *Gill,* 391, was not one in which the *validity* of the ordinance was assailed, but this was conceded, and the question was, whether the judgment of the commissioners in their assessment of damages was correct or not? But *here* the question is not one of *regularity* or of *error in judgment,* but of *power,* of *authority,* and in such a case equity has a clear right to interfere where an inferior tribunal undertakes to take private property for public uses without authority.

Now we say the whole proceedings of the city authorities are utterly null and void. This act of 1838, which was held to be valid under the old, is not valid under the present constitution of the State, which, by the 46th section of its 3rd article, says, that no man's property shall be *taken* for public use except upon payment of compensation agreed upon between the parties or *awarded by a jury.* This is made a *condition precedent;* the legislature cannot grant the power to take the property without tendering and making *this compensation.* The city authorities must first ascertain the compensation by contract or the *award of a jury,* or they have no authority to act. 1 *Baldwin C. C. Rep.,* 226, *Bonaparte vs. Camden & Amboy Rail Road Co.* Neither of these modes has been adopted in this case, and we therefore say that the whole proceedings are unconstitutional and void.

3rd. The receipt by the appellant of the sums awarded to him by the commissioners for damages did not, under the circumstances of the case, amount to an acquiescence by him in their proceedings, or to a waiver of any right he might have to contest the validity of their proceedings. He, in fact, never

*received* a cent of this money, but simply transferred a *part* of the damages in payment of the benefits assessed to him, and the residue he has never touched.

*Samuel Taggart* and *J. Nevitt Steele* for the appellees, argued the following points:

1st. That Poppleton's plat is not obligatory on the Mayor and City Council of Baltimore in reference to the opening of the public squares delineated thereon, and that the alleged square on the property of the appellant never having been in fact opened, had no legal or actual existence; and it was therefore entirely in the power and discretion of the Mayor and City Council, under the act of 1838, ch. 226, to open a street through the ground on which said square is located on said plat, precisely in the same manner as if no such location or delineation had been made. *Moale vs. Mayor & City Council,* 5 *Md. Rep.,* 314.

2nd. That the ordinance, No. 58, passed by the Mayor and City Council of Baltimore, in 1853, was a legal and valid exercise of the power conferred upon them by the act of 1838, ch. 226. The appellant has no right to make any objection to the *notice* in this case. He had notice *in fact,* and so avers in his bill. He was not damnified thereby and it is no ground for equitable relief. 6 *Gill,* 401, 402.

In regard to the question of the constitutionality of this act of 1838, we say, that so long as the *right of appeal* is allowed, by means of which a trial *by jury* can be had, the right of trial by jury is not taken away. 4 *Conn.,* 535, *Beers vs. Beers.* 8 *Yerger,* 444, *Morford vs. Barnes.* 6 *Seargt. & Rawle,* 240, *McDonald vs. Schell.* 2 *Murphey,* 41, *Keddie vs. Moore.*

3rd. That the ground of the appellant included within the limits of the square marked out on Poppleton's plat, would, if the Mayor and City Council should at any time determine to open a public square in that particular spot, be as available for that purpose *after* the proposed extension of Baltimore street as *before;* and the appellant, after the extension of this street through his property, would have precisely the same right to improve, build upon and use for his individual purposes that

part of his property included within the alleged public square, as he would have in reference to those portions thereof not so included, so that the two grounds of irreparable damage set forth and relied upon in the bill are both unfounded, and the only remaining damage sustained by the appellant results from the taking of his land for the bed of the street, and for this the law has provided, and he has *received*, adequate compensation.

4th. That all the proceedings for the opening of Baltimore street have been legal and regular, and that if there was in them any illegality or irregularity, the only and exclusive remedy of the appellant was by an appeal to Baltimore City Court from the return of the commissioners for opening streets. *Methodist Church vs. Mayor & City Council*, 6 *Gill*, 391. *Alexander vs. Mayor & City Council*, 5 *Gill*, 383. *Richardson vs. Mayor & City Council*, 8 *Gill*, 433.

5th. That the appellant having suffered more than a year to elapse after the passing of ordinance No. 58 without applying to a court of equity for relief; and having permitted the Mayor and City Council to go on with the opening of this street and to incur expenses, and assess upon and collect from various persons considerable sums of money for the payment of such expenses; and having declined or neglected to avail himself of his right of appeal to Baltimore City Court; and finally, having paid to the collector of the city a large sum of money for benefits to his property, resulting from the opening of the street, and received from the city register a like large sum for damages due to him for his land taken for the bed of the street, is estopped from denying the validity of this ordinance, and has waived all right of objection to any of the proceedings which have been taken under and by virtue of it. *Savings Institution vs. Schroeder*, 8 *G. & J.*, 93. *Okisko Co. vs. Elysville Manufacturing Co.*, 5 *Md. Rep.*, 152. 2 *Edwards' Ch. Rep.*, 229, *Verplanch vs. City of New York.*

ECCLESTON, J., delivered the opinion of this court.

The 12th section of the act of 1817, ch. 148, appointed certain commissioners, with authority to have surveyed and laid off, within the limits of the city of Baltimore, all such

streets, lanes and alleys, as they should deem proper and convenient, and to cause the same to be marked with so many and such durable marks as they should think necessary, to return plots with such survey and location, with proper explanations, to the register of the city.

The 13th section enacts: "That the said commissioners be, and they are hereby authorized, to contract for and lay out such and so many parcels of ground within the said city, as they shall judge convenient and necessary to be used for public purposes; and if the price demanded therefor shall be deemed reasonable by the Mayor and City Council of Baltimore, they are hereby authorized to purchase the same at the expense of the city, and such lots or parcels of ground shall be conveyed to the said Mayor and City Council, for the purposes aforesaid."

Under this act what is known as Poppleton's plat was made; and upon it is laid out or designated the lot or square then known as "Dr. Steuart's," which the appellant says has since been called "Maryland Square," and through which the proposed extension of Baltimore street passes.

The appellant says this is a public square, made such under the proceedings of the commissioners appointed by the act of 1817, and that the city authorities have no power to open a street through it without closing up the square according to the act of 1838.

This square has never been used by the public for any purpose, but has constantly been held and occupied by the complainant, or those under whom he claims. And the only evidence, of any sort, tending to show this to be a public square, is Poppleton's plat and the depositions of B. Mayer and N. Williams; which depositions speak of two boundary stones planted for the purpose of designating two points of the square. The record furnishes no proof of any contract between the owner of the property and the commissioners, or that any price was demanded therefor and assented to, or deemed reasonable by the Mayor and City Council, or that they had purchased the same, or that it had been conveyed

to them. Seeing that the owner of the property has held and used it for his private purposes; and perceiving no proof of any dedication of it to the public, except its having been laid out by the commissioners as described on their plat, and the setting up of two boundaries, it cannot be regarded as a square for public purposes, contemplated by the act of 1817.

The case of *Moale vs. The Mayor and City Council of Baltimore*, 5 *Md. Rep.*, 314, was decided upon the principle that the proceedings under the act which gave rise to Poppleton's plat, did not deprive the owner of the soil of his right to build upon, or to improve it, at his pleasure, although it might be covered by the bed of an unimproved street, designated on the plat, provided he had not been allowed compensation for the same; and that whenever the city authorities might think proper to open such a street he would be entitled to damages, just as if the street had never been so designated. And that decision was made notwithstanding the first proviso in the 16th section of the act of 1817, which is: "That no person shall be entitled to damages for any improvements, unless the same shall have been made or erected, before the laying out or locating of such street, lane or alley, or part thereof respectively." Perceiving the injustice of this proviso the Legislature qualified it, to some extent, by the act of 1832, ch. 207. The language of the proviso, it will be seen, includes a street, lane or alley, but not a public square. If therefore the principle of the decision is correct, in reference to a street, it cannot be less so in regard to a square. If this be true, the appellant had the same right to improve what he calls the Maryland Square, which he had to improve any other portion of his land within the limits of the city. And we see no reason why the city authorities have not the right to open a street through the same, in the same manner they have to open one through the private property of any other person. Nor can there be any necessity for them to close the square, for the plain and obvious reason that it never was a public square, in legal contemplation.

One of the grounds relied upon for reversing the order

dissolving the injunction is, that the notice of the intended application to the Mayor and City Council to open and condemn the street is defective, in not describing with sufficient accuracy and distinctness the street designed to be opened. But we do not consider the notice defective in the particular referred to.

Another ground on which it is said the injunction should be sustained is, that the proceedings in regard to opening the street are illegal and void, because they are not in conformity with the 46th section of the 3rd article of our present constitution, which declares: "The Legislature shall enact no law authorizing private property to be taken for public use without just compensation, as agreed upon between the parties or awarded by a jury, being first paid or tendered to the party entitled to such compensation." The appellant contends he has made no agreement in regard to compensation and that none has been awarded by a jury, consequently the proceedings on the part of the city authorities give him a right to relief by injunction.

It has been conceded, that the two cases of *Alexander & Wilson, vs. The Mayor & City Council of Balto.*, 5 *Gill,* 383, and *The Methodist Protestant Church* against the same defendants, in 6 *Gill,* 391, fully recognize the constitutionality of the act of 1838, under which the city acted in this instance. But it is insisted, that those decisions cannot in any degree affect the rights of the complainant secured to him by the new constitution, adopted since those cases were decided. And this renders it necessary to enquire, whether those rights have been violated.

In the third section of the old bill of rights it was declared, "That the inhabitants of Maryland are entitled to the common law of England, and the trial by jury according to the course of that law." Notwithstanding this, the legislature passed laws at different times extending the jurisdiction of justices of the peace in matters of contract, and giving jurisdiction in matters of *tort* where they had none previously. These laws, of course, made no provision for trials by jury except on appeal

to the county courts, and yet they were constantly acquiesced in and not considered as being repugnant to the bill of rights.

In several of our sister States where the right of trial by jury is guarded by constitutional enactment, it has been decided that laws passed subsequent to the adoption of the constitution, giving increased jurisdiction to justices of the peace, where there was no provision for a trial by jury except upon appeal, are not unconstitutional. *Morford vs. Barnes,* 8 *Yerger Rep.,* 444. *Beers vs. Beers,* 4 *Conn. Rep.,* 535. *McDonald vs. Schell,* 6 *Seargt. & Rawle,* 240.

In the Connecticut bill of rights the language is, "The right of trial by jury shall remain inviolate." And this provision was held not to have been violated by an act extending the jurisdiction of magistrates, before whom no trial by jury could be had but where an appeal was given, although an appeal bond was required. In delivering the opinion of the court, C. J. Hosmer says, "I am satisfied that the liberty of appeal in the case under discussion preserves the right of trial by jury inviolate, within the words and fair intendment of the constitution; and that no such unreasonable hardship is put on the appellant by the bond required for the prosecution of the appeal as to justify the assertion, that the right of trial by jury is in any manner impaired."

In the case cited from Pennsylvania, the question was, whether a provision requiring payment of costs before an appeal could be taken was a violation of the constitution of the State? The plaintiff in error contended it was, because the costs might amount to such a sum as a poor man could not pay, and then he would be deprived of a trial by jury. The court refused to hear counsel for the defendant in error and decided the case in his favor, declaring the act requiring costs to be paid was not unconstitutional.

These cases fully establish the principle, that where a law secures the trial by jury upon an appeal, it is no violation of a constitutional provision for guarding that right, although such law may provide for a primary trial without the intervention of a jury. This is upon the ground that the party, if he thinks proper, can have his case decided by a jury before it is finally settled.

It has been said these decisions can have no proper applica-tion to the present subject, because they relate merely to the private right of a citizen, whilst the provision of the constitution now under discussion is a restriction upon the exercise of public authority. But if it be so, it is a restriction for the protection of private property, and we do not perceive any real difference in principle between the two subjects so far as the rules of con-struction may be concerned. In truth, the first is a restraint upon legislative authority for the preservation of the right of each individual to a jury trial. The other prohibits the taking of private property for public use without compensation first paid or tendered, after having been ascertained in one of the modes prescribed.

The act of 1838 gives authority to the Mayor and City Council of Baltimore "to provide for laying out, opening, extending, widening, straightening or closing up, in whole or in part, any street, square, lane or alley within the bounds of said city, which, in their opinion, the public welfare or con-venience may require; to provide for ascertaining whether any, and what amount in value of damage will be caused thereby, and what amount of benefit will thereby accrue to the owner or possessor of any ground or improvements within or adjacent to said city, for which such owner or possessor ought to be compensated or ought to pay a compensation." It also au-thorizes them "to provide for granting appeals to Baltimore City Court from the decisions of any commissioners, or other persons appointed in virtue of any ordinance, to ascertain the damage which will be caused or the benefit which will accrue to the owners or possessors of ground or improvements, by locating, opening, extending, widening, straightening or clos-ing up, in whole or in part, any street, square, lane or alley within said city, and for securing to every such owner and pos-sessor the right, on application within a reasonable time, to have decided by a jury trial whether any damage has been caused or any benefit has accrued to them, and to what amount."

Under this act the Mayor and City Council passed the ordi-nance of 1850, No. 17, providing for the annual appointment

of three commissioners for opening streets in the city.   By the ninth section of which the right of appeal is given, providing for a trial by jury whenever any person shall be dissatisfied with the assessment of damages or benefits which shall be made by the board of commissioners.

The ordinance of 1853, No. 58, authorizing the opening of the street in controversy, and under which the proceedings complained of took place, was passed with express reference to the provisions of the act of 1838, and the ordinance of 1850.   These proceedings are not, in our opinion, illegal and void under the present constitution.

The doctrine established by the practice in Maryland, and by the decisions in other States, which have been referred to, in regard to the highly valued privilege of trial by jury, we think will fully justify us in saying there is nothing in our present constitution which prohibits the Legislature from passing a law authorizing private property to be taken for public purposes, if provision is made for compensation first to be paid or tendered to the owner, the ascertainment of which is to be made by contract with him, or by the assessment of commissioners, giving to the owner the right to appeal from their decision, and securing to him a trial by jury before the appellate tribunal, provided the appeal be taken within some specified reasonable time.   And, in our opinion, if the owner should not appeal within the time prescribed, and the compensation assessed should be paid or tendered, the property might then be taken for public use.   Under such circumstances the neglect or refusal to appeal would very properly be considered as a waiver or abandonment of the right to have the damages awarded by a jury, and as an agreement, on the part of the owner to accept the compensation proposed by the public, by means of the assessment.   If this is a proper construction of the constitution in reference to a law which may now be passed, then, so far as the provisions of the act of 1838, and the ordinance of 1850, are not inconsistent with the power of the Legislature in reference to a future law, they are not unconstitutional and void; for the 3rd article of the

declaration of rights continues in operation all acts and parts of acts of Assembly in force on the first Monday of November 1850, except such as have since expired, or were altered by the constitution, or have been changed or repealed by subsequent legislation.

Under the proceedings for opening the proposed street, compensation to the appellant has been assessed by commissioners. We have seen that the act of 1838, and the ordinance of 1850, gave him a right to appeal from the decision of the commissioners, and to have his compensation awarded by a jury, if he had desired to do so. This he declined doing, and by waiving that right he has virtually agreed to take the proposed compensation. His failure to appeal is not the only evidence of an agreement to accept the damages assessed, for the appellant has received, voluntarily, a large portion of the amount allowed him, by applying the same in discharge of the benefits assessed upon his property. We have said voluntarily received, although it has been insisted that he applied a portion of the damages in payment of benefits, not voluntarily, but by compulsion, for the purpose of saving his property from being sold. If, as it is contended, because the proceedings were illegal and void, the appellant had a right to enjoin them, most undoubtedly he had an equal right, before his application of the damages in discharge of the benefits, to have prevented, by injunction, the sale of his property for the payment of benefits. The same illegality which would authorize the interposition of the strong arm of a court of equity to stop the opening of the street, would surely justify the exercise of the same power to prevent the city authorities from compelling payment for benefits assessed on account of the supposed increased value of property, by the opening of the street. If the proceedings were illegal, no sale could have been made under them for benefits, if proper steps had been taken to prevent it, and a payment under such circumstances, would be voluntary; especially so when, as in this case, no advertisement or notice of such a sale had been published or given. And if the proceedings were not illegal, but valid, it is a mat-

Steuart *vs.* Mayor and City Council of Baltimore, *et al.*

ter of no importance whether the payment was voluntary or not.

Prohibition against taking private property until payment or tender of compensation is first made, and the right to have the amount of compensation settled by a jury or by agreement, are the important rights designed to be secured to the owners of property by the present constitution. And although the proposed street has been surveyed, the survey reported, and the damages and benefits assessed, yet the appellant's land has not been *taken,* in the legal sense of that word. *Bonaparte vs. The Camden & Amboy Railroad Co.,* 1 *Baldwin's C. C. Rep.,* 226. The constitutional prohibition against taking private property for public use, until compensation is first paid or tendered, means *taking* the property from the owner, and *actually* applying it to the use of the public. It does not mean the preliminary measures necessary in such cases. To hold that compensation must be paid or tendered, before a survey should be made, or other preparatory steps taken, would be a construction of the constitution not required by its language, or necessary for the protection of private rights. It is quite a sufficient protection, if the owner is secured in the use and enjoyment of his property until the damages he may sustain are constitutionally ascertained, and paid or tendered. And until then, we think, a street cannot be opened or used, but an entry to grade, or to prepare the ground for that purpose, would be illegal; and the persons so entering would be responsible, in damages, to the owner of the property.

So far as the proceedings on the part of the appellees have gone, we do not perceive such illegality in them as will sustain the injunction, therefore the order dissolving it will be affirmed, and the bill dismissed with costs to the appellees.

*Order affirmed and bill dismissed.*