The Mayor and City Council of Baltimore, and Henry S. Taylor, City Collector *vs.* Jacob Hook, and others.

*Necessity to Condemn street, though laid down on Poppleton's Plat—Injunction to restrain Collection of Assessments for the Expense of paving a Street— When the City of Baltimore acquires Title to the bed of a Street—Absence of right in the City before acquiring Title, to enter upon the Property to make Improvements.*

The fact that a street has already been designated as a street on Poppleton's Plat of the City of Baltimore, does not render a condemnation thereof unnecessary.

By a special ordinance approved the 17th of May, 1881, the City Commissioner was directed to have all that part of Caroline street, between John street and Boundary avenue, graded, paved and curbed in pursuance of the Act of 1874, ch. 218, and according to the provisions of ordinance No. 44, of the 4th of June, 1874, so far as the same were applicable, the expense thereof to be assessed, as provided by said ordinance No. 44, upon the owners of property binding on said street, in proportion to the number of front feet owned by them respectively. The second section of the Act of 1874, ch. 218, authorized the Mayor and City Council of Baltimore, to provide by ordinance for the grading, paving and curbing of any street, lane or alley in said city, then *condemned,* ceded or opened as a public highway, or which might thereafter be condemned, ceded or opened; and for assessing the cost of any such work, in whole or in part, *pro rata,* upon the property binding on such street, lane or alley, and for collecting such assessments as other city taxes were collected. In advance of the condemnation of Caroline street as a public highway, between the streets indicated in the aforesaid special ordinance, the City Commissioner proceeded to have said part of Caroline street, graded, paved and curbed, and to assess the cost of such work upon the property binding on said street, in proportion to the frontage; and issued his warrant authorizing and directing the City Collector to proceed to the collection of said assessments. On a bill filed by the owners

of property binding on said Caroline street, asking that the enforcement of the payment of said assessments be enjoined, it was HELD:

That as the assessments for grading, paving and curbing Caroline street, aforesaid, were determined and imposed in advance of the condemnation of said street as a public highway, they were illegal and void, and their collection should be perpetually enjoined.

The City of Baltimore acquires no title to the bed of a street until it has been regularly condemned as a public highway, and the amount of the damages awarded therefor to the owner, been paid or tendered by the city authorities.

And until such title is acquired, the city cannot lawfully enter upon the land and assess the adjoining owners for the expense of grading, paving and curbing the street.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, and IRVING, J.

*Bernard Carter, City Solicitor,* and *James L. McLane, City Counsellor,* for the appellants.

*Michael A. Mullin,* for the appellees.

YELLOTT, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City. The appellees, in their bill of complaint filed in the Court below, invoked the interposition of that Court, and asked for the issuance of a writ of injunction to inhibit the enforcement of the payment of assessments and taxes for the grading, paving and kerbing of a portion of Caroline street, extending from John street to Boundary avenue. In its decree the Circuit Court declared all these assessments and taxes, levied against the complainants,

illegal and void, and the injunction, which had been issued, was made perpetual.

The verity of nearly all the material averments in the bill of complaint is admitted in the answer. It thus appears that the appellees are the owners of lots on Caroline street, having purchased the same from the trustees in insolvency of James Hand; and that this section of the street, although designated on Poppleton's Map as a part of Caroline street, had never been opened and improved. By a special ordinance, approved May 17th, 1881, the City Commissioner was directed to have all that part of Caroline street, between John street and Boundary avenue, graded, paved and curbed in pursuance of the Act of Assembly of 1874, chapter 218, and according to the provisions of ordinance No. 44 of June 4th, 1874, so far as the same are applicable; the expenses thereof to be assessed, as provided by said ordinance No. 44, upon the owners of property binding on said street, in proportion to the number of front feet owned by them respectively.

The Act of 1874, ch. 218, does not admit of a construction which would authorize the institution of these proceedings. The provisions of the second section of this statute, in conformity with which the special ordinance was passed, are inoperative until there has been a condemnation of the property in accordance with the mode of procedure indicated and required by the provisions of Article 4, section 827, of the Maryland Code of Local Laws, and of the Act of 1878, ch. 143. As said by this Court in the case of the *Mayor and City Council of Baltimore, et al. vs. Porter,* 18 *Md.,* 298, "the two systems for opening and condemning streets, and for grading and paving them, are essentially different from each other; they are provided for by different laws and ordinances, executed by different officers, and governed by different rules and regulations."

The fact that the portion of Caroline street, coming within the purview of the special ordinance, has already

been designated as a street on Poppleton's Map of the city does not render a condemnation unnecessary. It was decided in the case of *Stewart vs. Mayor & City Council of Baltimore, et al.,* 7 *Md.*, 510, that "the proceedings under the Act which gave rise to Poppleton's Map, did not deprive the owner of the soil of his right to build upon, or to improve, it at his pleasure, although it might be covered by the bed of an unimproved street, designated on the plat, provided he had not been allowed compensation for the same; and that whenever the city authorities might think proper to open such a street he would be entitled to damages just as if the street had never been so designated." And in the case of *Moale vs. Mayor and City Council of Baltimore,* 5 *Md.*, 322, the Court said:

" We hold that a person owning a lot lying on the bed of the street which is taken for the public use, is entitled to be compensated for it *precisely as if no street was opened over it.* Of course this view is wholly independent of all question of dedication. In such a case there could be no claim interposed for damages, for the party having given the ground to the community, can set up no just claim to be compensated for it." And the Court further said, "it is a portion of the inherent sovereignty of the State, to appropriate to a public use the property of individuals when public necessity or utility requires it, upon securing to the party a just compensation for any injury he may sustain. This is not an exercise of the taxing power, but an exercise of the right of eminent domain as contradistinguished from it."

There has never been any dedication of the property in controversy, nor has the city at any time bought and paid for the same. A condemnation of said property was therefore necessary. The work of grading and paving, as authorized by the Act of 1874, ch. 218, could not be commenced under legal sanction antecedently to a compliance with this prerequisite. Not only does not the statute

sanction such a course of proceedure, but the Constitution of the State peremptorily forbids the taking of the property of the citizen for public uses without just compensation.

The record discloses the fact that an effort was made with a view to the condemnation of this property; but the appellees contend that this effort has been wholly abortive; averring in their bill of complaint that the condemnation is inchoate and inoperative, and could therefore invest the city with no authority to enter upon and commence the work, nor to levy assessments on the owners of the soil, because no compensation has ever been paid or tendered. The truth of the averment that no compensation has ever been paid or tendered is not denied, but on the contrary is explicitly admitted in the answer; and the appellants now express their readiness to pay the sum of $104, which is the amount remaining after a deduction of the benefits, assessed under a supposed exercise of the taxing power, from the damages estimated by the City Commissioner; which assessment of benefits the appellees allege was without authority and illegally levied by trespassers on their property.

The right of the appellants to enter upon the property of private citizens for the purpose of appropriation to public use, before they had acquired a title by the observance of every legal requirement, is certainly a grave and important question, but is such as should present but little difficulty in its solution. It is apparent that the appellants could acquire no title except by payment or tender of just compensation, and until the acquisition of title there could be no entry for the purpose of appropriation. A contrary doctrine might possibly expose the citizen to the infliction of the most flagrant injustice. There is no obligation on the city to accept the terms of the condemnation, and the owner of the soil cannot invoke the coercion of legal authority to compel an acceptance. If, therefore,

an entry could be made on his soil, his property damaged, and himself burdened with the payment of assessments for benefits by a party who had acquired no title, and who might, at any moment, abandon the work begun, his situation would be suggestive of the imperative necessity for protection to be afforded by an exercise of the paramount authority of the sovereignty of the State delegated to the legislative department of the government. But no such necessity exists. The judicial department of the government can readily apply an ample remedy, and that remedy the appellees have properly invoked.

A multitude of authorities might be cited in support of the proposition that no title could be acquired except by a compliance with the terms of the condemnation as designated by statutory provisions, and that the city is under no obligation to accept those terms, and could at any moment abandon the work already begun. In the case of the *Baltimore and Susquehanna R. R. Co. vs. Nesbit,* 10 *Howard,* 399, the Supreme Court of the United States said: "It is the payment or tender of the value assessed by the inquisition which gives title to the company, and consequently without such payment or tender, no title could, by the very terms of the law, have passed to them. It can hardly be questioned, that, without acceptance by the acts and in the mode prescribed, the company were not bound; that if they had been dissatisfied with the estimate placed upon the land, or could have procured a more eligible site for the location of their road, they would have been at liberty before such acceptance, wholly to renounce the inquisition. The proprietors of the land could have no authority to coerce the company into its adoption. This being the case, there could up to this point be no mutuality, and hence no contract, even in the constrained and compulsory character in which it was created and imposed upon the proprietors by the authority of the statute."

The appropriation of private property to public use has been held by this Court not to be "complete until the proprietor is paid or tendered the value of his property, as ascertained by the inquest or assessment. No preliminary step prior to actual payment or tender, so fixes the corporation as to prevent an abandonment of the condemnation or of the enterprise." *State, Relation of Mc-Clellan vs. Graves, et al.*, 19 *Md.*, 370; *Graff vs. Mayor and City Council of Baltimore*, 10 *Md.*, 551.

In the case of *Norris, et al. vs. Mayor & C. C. of Baltimore*, 44 *Md.*, 604, the Court said: "It has long been the settled law of Maryland that both private and municipal corporations, when authorized to exercise the power of eminent domain, have the right to renounce the inquisition and select a more eligible route, or wholly to abandon the improvement or enterprise, at any time before actual payment of the *amount assessed,* either by commissioners or jury, and until that time no title to the property condemned vests in the corporation. But when this sum is paid or tendered the title vests and the constitutional requirement is gratified."

The citation of other authorities showing the uniformity of the decisions in relation to this question is unnecessary, because the exercise of this right of eminent domain has not been delegated by the sovereignty of the State without the precaution of providing protection to the citizen from evils which might result from its abuse. There is a provision in Art. 4, sec. 837, of the Code of Local Laws, and also in the Act of 1878, ch. 143, which makes it the duty of the Mayor and City Council "to provide for collecting and paying over the amount of compensation adjudged to each person entitled, or investing it in the stock of the said corporation, bearing an interest of five per centum per annum, for the use of any such persons, who, because of their infancy, absence from the city or any other cause, may be prevented from receiving it, *before any street,*

*square, lane or alley, in whole or in part, shall be opened, extended, widened, straightened or closed up."*

The meaning of this statutory provision is so plain and apparent as to need no construction. The appellants admit, in their answer, that they have neither paid nor tendered the amount of compensation, nor invested it for the benefit of the owners of the property in conformity with the mode prescribed by the statute. Having therefore acquired no title nor right of entry for the purpose of appropriating the property for public uses, when they thus went upon the lands of the appellees without legal authority they were intruders and trespassers; and when they constituted themselves a tribunal to determine what amount of assessments should be paid by the rightful owners of the soil, their proceedings were *ultra vires* and absolutely null and void.

In *Williamson, et al. vs. Berry,* 8 *Howard,* 543, the Supreme Court of the United States, after referring to *Attorney-General vs. Lord Hotham, Turn. & Russ.,* 219, said: "The rule is that when a limited tribunal takes upon itself to exercise a jurisdiction which does not belong to it, its decision amounts to nothing, and does not create a necessity for an appeal." And in another paragraph of the same opinion it is further said: "If it acts without authority its judgments and orders are nullities; they are not voidable, but simply void, and form no bar to a recovery sought, even prior to a reversal, in opposition to them; they constitute no justification, and all persons concerned in executing such judgments, or sentences, are considered in law as trespassers."

In the English Courts it has been so frequently decided, as to have become a settled principle, which cannot now be successfully controverted, that a void proceeding is so entirely vitiated as to be incapable of amendment. It has no effect whatever. Being absolutely null and void no person can justify under it. *Kenworthy vs. Peppiot,* 4 *B.*

Mayor, &c., of Baltimore, *et al. vs.* Hook, *et al.*

*& Ald.,* 288 ; *Parsons vs. Lloyd,* 2 *W. Bla.,* 845 ; *Grant vs. Bagge,* 3 *East,* 128 ; *Carratt vs. Morley,* 1 *Ad. & E., (N. S.)* 18, (41 *Eng. Com. Law;*) *Mitchell vs. Foster,* 12 *Ad. & E.,* 472 ; *Brook vs. Jenney,* 1 *Gale & Davison,* 567.

That when the City Commissioner entered upon the property of the appellees and proceeded to impose upon them the burden of these assessments before the city had acquired any right or title by condemnation, he was a trespasser, there can be no doubt; and that his proceedings were not merely voidable but absolutely null and void, seems to be a proposition so clear as to be beyond the scope of controversy. It has been decided that a void proceeding is so entirely vitiated as to be incapable of amendment. It is therefore difficult to perceive how parties, who, in legal contemplation, occupy the attitude of intruders and *tort feasors,* can render valid proceedings which were null and void in their inception, by simply putting an offer on the record to pay damages which should have been paid anterior to an entry on the land. The offer itself is not even a tender, for it is an offer to pay the money when called for. Tenders are *stricti juris* and nothing is presumed in their favor. They must be unqualified and without condition. *Brady vs. Jones,* 2 *Dowling & Ryland,* 305 ; *Glascott vs. Day,* 5 *Esp.,* 48 ; *Huxham vs. Smith,* 2 *Camp.,* 21 ; *Thomas vs. Evans,* 10 *East,* 101 ; *Jennings vs. Major,* 8 *C. & P.* 61.

But no subsequent act of a wrong-doer can render valid proceedings which were absolutely null and void *ab initio.* The appellees had these assessments imposed upon them by trespassers on their property. They wish to be relieved from the burdens thus imposed, and have properly invoked the aid of a Conrt of equity. In *Stewart vs. Mayor, &c., of Baltimore, et al.,* 7 *Md.,* 515, this Court has said : " If the proceedings were illegal no sale could have been made under them for benefits, if proper steps had been taken to prevent it." In this case the appellees have

resorted to the proper remedy, and it is clear that the Circuit Court was right in granting the injunction and making it perpetual. Its decree should therefore be affirmed.

*Decree affirmed.*

(Decided 19th June, 1884.)