THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.*
ROBERT E. BOYD, and others.

*Condemnation of Streets—What required under Condemna-
tion proceedings to give Title to the City—Trespass quare
clausum fregit—Ouster or disseisin—Measure of Damages—
Exemplary Damages.*

In February, 1851, C. B. became the owner in fee of a lot of ground
in the City of Baltimore. In May, 1871, C. B. died intestate, leav-
ing her husband surviving her. The husband died in July, 1881.
On the 17th of July, 1869, the Mayor and City Council of Balti-
more passed an ordinance providing for the condemnation and
opening of certain streets, and the line of condemnation crossed
the Boyd lot. The ordinance recited that application for its pas-
sage was made by the Baltimore and Ohio Railroad Company, and
one of its conditions was, that it was to be inoperative until the
railroad company should enter into an agreement with the city, to
pay all damages that might be awarded to owners of property over
and above the benefits assessed. On the same day, another ordi-
nance was passed, by which the city granted permission to the
railroad company to construct and operate a railroad from its
Locust Point line along the beds of the streets so to be condemned
and opened, &c. Proceedings for condemnation were duly had
under the first of the above ordinances, and in June, 1871, the
company paid to the City Collector the excess of damages over
benefits awarded. In 1872 and 1873, the company constructed its
branch road with two tracks in the beds of these streets, and in
1877, laid a third track. Since their construction these tracks
have been used by the company as part of its main line, and at
least a dozen trains pass over them daily. The Boyd lot lies in an
open meadow without buildings or enclosure, and save for the
construction of the railroad across it, remains as it was at the time
of the condemnation. The space occupied by the road as it passes
through this lot, is about eighteen by thirty-six feet. On the 5th
of June, 1883, the four children and heirs-at-law of C. B., brought
an action of trespass *quare clausum fregit* against the railroad com-
pany. The declaration averred "that the defendant on various
days and times, and frequently, within *three years* next before the

Baltimore and Ohio R. R. Co. *vs.* Boyd, *et al.*

institution of this suit, broke and entered a certain close of the plaintiffs situated within the City of Baltimore, and ran and drove large cars drawn by locomotives upon and over the said close against the will of the plaintiffs and to their great damage." In the amount of damages under the condemnation proceedings, paid by the railroad company to the City Collector, was included the damages assessed for that portion of the Boyd lot taken for the bed of the street, less the benefits awarded to the portions on either side of the street; but the city never paid or tendered the same to the owners of the lot, nor was it invested in city stock as provided by the Act of 1878, ch. 143, until after the commencement of the suit against the railroad company. HELD:

1st. That without such payment, tender, or investment, the city acquired no title, or right of entry for the purpose of appropriating the plaintiff's property to public use, even though the condemnation proceedings may have been in other respects regular.

2nd. That the entry upon the lot either for the purpose of making a street through it, or for constructing a railroad upon it was clearly a trespass, and the investment of the money after the commencement of the suit, had no effect whatever upon the right of the plaintiffs to recover for the trespasses complained of and committed down to the bringing of the suit.

3rd. That there was no such ouster or disseisin by the defendant as would prevent the plaintiffs from maintaining their action for the trespasses set out in the declaration.

4th. That the only damages the plaintiffs could recover under their declaration, (if they were not entitled to exemplary damages,) were damages done to their land, and their rights as owners of the close or lot, by the trespasses complained of in the declaration, that is to say, damages caused by the acts of the defendant in having on various days and times within three years before the institution of the suit, driven large cars drawn by locomotives "upon and over their said close."

5th. That the plaintiffs could not under their declaration, recover, as damages, compensation for the use of the railway tracks, upon the assumption that they were the owners of them, even if such damages could be recovered at all under such form of action. Neither was the measure of damages in any wise dependent upon the "value of the property," or the sum awarded in the street condemnation proceedings.

Baltimore and Ohio R. R. Co. *vs.* Boyd, *et al.*

6th. That the plaintiffs were not entitled to recover exemplary damages, there being no element of fraud or malice, or evil intent, or oppression in the acts of the defendant in entering upon, and building the tracks for their road over the plaintiffs' lot, and the continued use of them down to the bringing of the action.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiffs offered the following prayers:

1. If the jury shall find the execution of the various deeds and wills, of which certified copies have been offered in evidence by the plaintiffs, and the delivery of the former, the deaths of Mordecai Gist and of Clarissa and Philip D. Boyd, the identity of lot forty-three, mentioned in the deed from Chancellor Hanson to Mordecai Gist, with the lot designated by the same number on the two plats, proved by certified copies, and in the deed from Mary and States Gist to Independent Gist; that the plaintiffs, Robert E. Boyd, Emma E. Boyd, Clara H. Lambert and Ella H. Taylor, are the only children of Clarissa Boyd, and the plaintiffs, Robert Lambert and Catlett Taylor, the husbands of the two lastly named respectively; that after the year of 1870, and before the death of Philip D. Boyd, the defendant corporation, without the permission or consent of the said Phillip D. Boyd or of the plaintiffs, or any of them, laid their tracks of railway across lot seventeen, in the deed from John Glenn and Robert Purviance, Jr., to Clarissa Boyd, mentioned; and that after the death of Philip D. Boyd, and before the institution of this suit, the defendant, without the consent or permission of the plaintiffs, or any of them, caused trains of cars in large numbers to run daily over the said tracks, then, under the pleadings and all the evidence in the cause, their verdict must be for the plaintiffs, with such damages as will in their judgment amount to a fair

compensation for the said unauthorized use of the said tracks.

2. If the jury shall find the facts in the plaintiffs' first prayer enumerated, and shall further find that the defendant, by its counsel, received from the plaintiffs' attorney, the letter of the 5th of April, 1882, read in evidence, and wrote and had delivered in reply thereto the letter of the 28th of April, 1882, also read in evidence; and that after the said correspondence, the defendant continued to use the tracks in the first prayer mentioned, as it had done before, then, in addition to the measure of damages fixed by the first prayer, the jury are at liberty in their discretion to award such exemplary damages, if any, as they may think proper under all the circumstances of the case as disclosed by the evidence.

The defendant offered the following prayers:

1. That under the pleadings and evidence in this cause the plaintiffs are not entitled to recover in this action.

2. That if the jury shall find from the evidence in the cause, that the plaintiffs were the legal owners of the property and premises mentioned in the declaration, at the time when the same was condemned by the Mayor and City Council of Baltimore as a street under the condemnation proceedings given in evidence, and that subsequently the defendant laid its railroad tracks upon said property, under and in pursuance of the terms and conditions of the Ordinances of the Mayor and City Council of Baltimore, Nos. 52 and 53, dated July 17th, 1869, and No. 62, dated October 7th, 1869, and also the Ordinance No. 29, of March 30, 1870, read in evidence in the cause, then the plaintiffs are not entitled to recover in this action, although the jury may also find from the evidence that the Mayor and City Council of Batimore failed or neglected to pay to the plaintiffs the amount of damages awarded them in said condemnation proceedings, or to invest said amount in city five per cent. stock until the 14th of December, 1883.

3. That under the pleadings and evidence in this cause, the plaintiffs are not entitled to recover nominal damages, as they have offered no evidence legally sufficient to prove the actual value of the property.

4. That in case the jury find a verdict in favor of the plaintiffs, then they shall limit the amount thereof to the sum awarded in the condemnation proceedings in evidence, with the interest thereon at six per cent. *per annum,* for the three years next before the beginning of this suit.

The Court (PHELPS, J.,) granted the prayers of the plaintiffs, and rejected those of the defendant. The jury rendered a verdict for $1500 in favor of the plaintiffs, and judgment was entered accordingly. The defendant appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Hugh L. Bond, Jr.,* and *John K. Cowen,* for the appellant.

*Charles J. Bonaparte,* for the appellees.

MILLER, J., delivered the opinion of the Court.

In this case an action of trespass *quare clausum fregit* was brought on the 5th of June, 1883, by the appellees against the appellant. The declaration avers "that the defendant, on various days and times, and frequently within *three years* next before the institution of this suit, broke and entered a certain close of the plaintiffs, situated within the City of Baltimore, and ran and drove large cars, drawn by locomotives upon and over the said close, against the will of the plaintiffs, and to their great damage." The case was tried before a jury upon issue joined on the plea of *non cul.,* and at the trial an exception was taken to the ruling of the Court upon the instructions asked for by the parties respectively.

Baltimore and Ohio R. R. Co. *vs.* Boyd, *et al.*

· The undisputed facts of the case are substantially as follows: In February, 1851, Mrs. Clarissa Boyd became the owner in fee of a long narrow lot of ground, in the City of Baltimore, fronting about eighteen feet on the southwest side of Fort Avenue, and running back about twelve hundred feet to the water. Mrs. Boyd died in May, 1871, intestate leaving her husband surviving her, who consequently became entitled to a life estate in this lot. The husband died in July, 1881, and this suit was brought by the four children and heirs-at-law of Mrs. Boyd. On the 17th of July, 1869, the Mayor and City Council of Baltimore passed an ordinance providing for the condemnation and opening of certain streets between Fort Avenue and the water, and the line of condemnation crossed this Boyd lot. The ordinance recites that application for its passage was made by the Baltimore and Ohio Railroad, and one of its conditions was that it was to be inoperative unless and until the said company shall enter into an agreement with the city to pay all damages that may be awarded to owners of property, over and above the benefits assessed. On the same day another ordinance was passed, by which the city granted permission to the Railroad Company to construct and operate a railroad from its Locust Point line along the beds of the streets so to be condemned and opened, so as to make a connection by water with the Philadelphia, Wilmington and Baltimore Railroad. Proceedings for condemnation were duly had under the first of the above ordinances, and in June, 1871, the company duly paid to the city collector the excess of damages over benefits awarded, amounting to $6611.98. In 1872 and 1873 the company constructed its branch road with two tracks in the beds of these streets, and in 1877 laid a third track. Since their construction, these tracks have been used by the company as part of its main line, and at least a dozen trains pass over them daily. The plaintiffs' lot lies in an open meadow without

Baltimore and Ohio R. R. Co. *vs.* Boyd, *et al.*

buildings or enclosures, and but for the construction of the railroad across it, is in the same condition now as at the time of the condemnation. The tracks of the road are laid at the grade of the street, but the street is graded only to the width of the tracks, about thirty-six feet—so that the space occupied by the road as it passes through this lot is eighteen feet one inch by thirty-six feet. With this statement of the facts as to the *locus in quo*, and the character of the trespass complained of, we are prepared to consider the questions presented by the rulings to which the exception was taken.

*First.*—The defendant's second prayer was properly rejected. It appears that under the condemnation proceedings the sum of $110 was assessed as damages, for that portion of the plaintiffs' lot taken for the bed of this street, and $1 each as benefits to the portions on either side of the street. The balance of $108 damages was included in the amount paid by the railroad company to the city, but the city never paid or tendered the same to the owners of the lot, nor was it invested in city stock as provided by the Act of 1878, ch. 143, until the 14th of December, 1883, after the commencement of this suit. It is plain that without such payment, tender, or investment, the city acquired no title, or right of entry, for the purpose of appropriating the plaintiffs' property to public use, even though the condemnation proceedings may have been in other respects regular. This attempted condemnation can, therefore, afford no defence to this action. The entry upon this lot, either for the purpose of making a street through it, or for constructing a railroad upon it, was clearly a trespass, and the investment of the money in December, 1883, has no effect whatever upon the right of the plaintiffs to recover for the trespasses complained of and committed down to the bringing of their present action. Such is the effect of our recent decision in the case of *Mayor and City Council of Balt. vs. Hook, et al.,*

62 *Md.*, 371. The question whether if the money had
been duly paid, and the street had been duly condemned
across the plaintiffs' lot, the ordinance granting permis-
sion to the railroad company to lay its tracks upon and
operate a *steam* railroad over it, would have been valid
and effective to authorize the defendant to make such use
of it, without compensation *therefor* to the plaintiffs, is
one not presented by the record, and we therefore refrain
from expressing any opinion upon that subject.

*Second.*—The original entry and trespass was during
the life-tenancy of Mr. Boyd, and while the plaintiffs' in-
terest was in reversion, and now the defendant's counsel
insist that the plaintiffs have mistaken their remedy.
Their argument is that the defendant entered and appro-
priated to its use a certain portion of the plaintiffs' land,
and has since continuously occupied the same with its
tracks and roadway and by running trains of cars over it
daily; that it thus became the disseisor of the life-tenant,
and has ever since held exclusive adverse possession; that
its conduct, if wrongful, was a continuing uninterrupted
trespass and not a series of oft-repeated trespasses; that
the plaintiffs cannot recover for the disseisin of the life-
tenant, nor can they recover in this action for acts done
since the disseisin (for which alone the declaration goes)
for they have had no possession of the property to enable
them to maintain trespass *quare clausum fregit*, and they
should therefore have sued in ejectment. This argument
is not without force, and the legal proposition upon which
it is founded is free from difficulty. As was said by this
Court in *Gent vs. Lynch*, 23 *Md.*, 64, " the gist of this
action of trespass, is injury done to the possession, and in
order, therefore, to maintain it, possession either actual or
constructive by the plaintiff is necessary; a mere right
of entry on lands is not sufficient if they be in the actual
possession and occupancy of the disseisor; a disseisee
though he may maintain trespass for the original act

of disseisin, cannot have this action for any subsequent injury until he has acquired the possession by re-entry." Substantially the same rule is announced by the Supreme Court of Massachusetts, in *Murray vs. Fitchburg Railroad Co.*, 130 *Mass.*, 101, where it is said, "the proposition is an entirely plain one, that the owner of land cannot maintain an action of trespass for acts done by a disseisor during his disseisin, without a re-entry. But it is equally clear that if the owner is in possession of land, the act of disseisin by the disseisor is a trespass for which he has his action, though he may not recover for the mesne profits or intermediate damage during the time he is disseised, until he shall by suit or otherwise have regained possession." As to the law, there is, therefore, no difficulty, but a majority of the Judges before whom this case was argued, are of opinion, that the facts show no such ouster or disseisin by the defendant, as will prevent the plaintiffs from maintaining this action for the trespasses set out in the declaration. The defendant's first prayer was therefore properly rejected.

*Third.*—Counsel for the plaintiffs have argued that as the original entry to construct the railway was tortious, the ties, rails and other structures affixed to the freehold by the company, became the property of the land owner, but this claim has been strenuously denied by the defendant's counsel. Who is, under the circumstances of the case, the owner of these structures, is a question about which there is grave doubt, but we are of opinion it is not so presented by the record as to require us to decide it. It is supposed to arise, because the plaintiffs' first prayer allows the jury to award such damages as will, in their judgment, amount to a fair *compensation* for the unauthorized *use of these tracks* by the defendant, by running trains of cars over them daily. But we are clearly of opinion the measure of damages in this case is in no way affected by, or dependent upon, the ownership of these structures.

The only damages the plaintiffs can recover under the declaration in this case, (if they are not entitled to exemplary damages,) are damages done to their land,—to their rights as owners of this close or lot—by the trespasses complained of in the declaration, that is to say, damages caused by the acts of the defendant in having on various days and times within three years next before the institution of this suit, driven large cars drawn by locomotives "*upon and over their said close.*" Now in the nature of things, no greater damage could be done *to this lot*, or to the rights of the owners, by driving the cars across it on these tracks, than upon any other structures. In fact, if the tracks were well laid and kept in repair, the damage *to the land* by running trains of cars over it on such tracks would be less than in any other known mode of transit. The plaintiffs cannot under this declaration, recover as damages, *compensation for the use of these tracks*, upon the assumption that they were the owners of them, even if such damages could be recovered at all in this form of action. Neither is the measure of damages in any wise dependent upon the "value of the property," or the "sum awarded in the street condemnation proceedings," as stated in the defendant's third and fourth prayers.

*Fourth.*—We are all of opinion the plaintiffs are not entitled to recover exemplary damages, and consequently that there was error in granting their second prayer, which allowed the jury to give such damages. This Court has, on many occasions, had this subject before it, and in the very recent case of *Philadelphia, Wilmington and Baltimore R. R. Co. vs. Hoeflich*, 62 *Md.*, 300, 307, the question was very carefully considered, and we there said that "to entitle one to such damages, there must be an element of fraud or malice, or evil intent, or oppression, entering into and forming part of the wrongful act. It is in such cases as these that exemplary or punitive damages are awarded as a punishment for the evil

motive or intent with which the act is done, and as an example or warning to others. But where the act, though wrongful in itself, is committed in the honest assertion of a supposed right, or in discharge of duty, or without any evil or bad intention, there is no ground on which such damages can be awarded." This, we are satisfied, places the doctrine upon the right ground, and the rule applies as well to cases of injury to property as to the person. A careful examination of the testimony in the record has convinced us that in the acts of the defendant in entering upon and building the tracks for their road over the plaintiffs' lot, and the continued use of them down to the bringing of the action, there is not a single one of the elements thus enumerated as essential to the allowance of such damages. The original entry, and construction of the tracks, were manifestly under the permission granted by the city ordinance, and upon the assumption, and under the belief, that the street condemnation proceedings were in all respects regular and perfect. The company remained in the undisturbed enjoyment of its road for more than ten years, when its counsel received the letter of the 5th of April, 1882, from the plaintiffs' attorney. That letter stated that the plaintiffs had received no compensation for their land condemned for the bed of the street; that the ordinance for opening that street required the railroad company to pay the compensation for property taken; and it further suggested that the company acquire by purchase the plaintiffs' interest in the entire lot, or the portion of it upon which the tracks were laid. To this the company's counsel replied by letter of the 28th of April, 1882, that while the books of the city departments indicated that the damages awarded for the portion of the plaintiffs' lot had not been paid, yet that the same books showed that the defendant had made all payments required of it by the ordinance, and that in his opinion the plaintiffs' claim should be against the city and not against

the railroad company. Counsel may have been mistaken in this view of the law, but there is nothing to show that he acted in bad faith, or that the company, in continuing to use the land under his advice, after the receipt of the letter from the plaintiffs' counsel, acted in .a spirit of oppression, or from any evil motive or intent. Clearly this is not a case for punitive damages. ·

<div align="right">

*Judgment reversed, and*
*new trial awarded.*